**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 25, 2007

DAYLE TRENTADUE, as Personal
Representative of the Estate of
MARGARETTE F. EBY, Deceased,

        Plaintiff-Appellee,

v                                No. 128579

JEFFREY GORTON, VICTOR NYBERG,
TODD MICHAEL BAKOS, MFO
MANAGEMENT COMPANY, and CARL
F. BEKOFSKE, as Personal Representative
of the Estate of RUTH R. MOTT, Deceased,

        Defendants,
and

BUCKLER AUTOMATIC LAWN
SPRINKLER COMPANY, SHIRLEY
GORTON and LAURENCE W. GORTON,

        Defendants-Appellants.

DAYLE TRENTADUE, as Personal
Representative of the Estate of
MARGARETTE F. EBY, Deceased,

        Plaintiff-Appellee,

v                                Nos. 128623, 128624, and
                                   128625

BUCKLER AUTOMATIC LAWN
SPRINKLER COMPANY, SHIRLEY
GORTON, LAURENCE W. GORTON,
JEFFREY GORTON, VICTOR NYBERG,
TODD MICHAEL BAKOS and CARL L.
BEKOFSKE, as Personal Representative of
the Estate of RUTH R. MOTT, Deceased,

        Defendants,

and

MFO MANAGEMENT COMPANY,

        Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

      This wrongful death case requires us to consider whether the common-law

"discovery rule," which allows tolling of the statutory period of limitations when a

plaintiff could not have reasonably discovered the elements of a cause of action

within the limitations period, can operate to toll the period of limitations, or

whether MCL 600.5827, which has no such provision, alone governs the time of

accrual of the plaintiff's claims.  We conclude that MCL 600.5827 alone controls.

Because the Court of Appeals held to the contrary, we reverse its judgment and

remand the case to the Genesee Circuit Court for further proceedings consistent

with this opinion.

2

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This case arises from the tragic rape and murder of Margarette F. Eby in November 1986 at her home in Flint. According to plaintiff's complaint, in 1981 Eby leased a residence in the gatehouse on the grounds of the Mott family estate from Ruth R. Mott (Mott) where Eby began to live. Eby was found raped and murdered on November 9, 1986, after last being seen alive on November 7, 1986. The rape and murder remained unsolved until 2002, when deoxyribonucleic acid (DNA) evidence established that Jeffrey Gorton, an employee of his parents' corporation, the Buckler Automatic Lawn Sprinkler Company (Buckler), which serviced the sprinkler system on the grounds, had committed the crime. Gorton pleaded no contest when charged with the murder and was sentenced to life imprisonment for Eby's rape-murder.

On August 2, 2002, plaintiff Dayle Trentadue, Eby's daughter and the personal representative of her estate, filed a complaint against Jeffrey Gorton; his parents Shirley and Lawrence Gorton who, as noted, operated Buckler; Buckler; Carl F. Bekofske, personal representative of the estate of Ruth R. Mott, deceased, who died in 1999; MFO Management Company (MFO), the management company that provided administrative services to the Mott family; and two of Mott's employees, Victor Nyberg and Todd Bakos, asserting several theories of negligence. Regarding the Gortons, the contentions were essentially negligent hiring and monitoring of Jeffrey Gorton. The other defendants were allegedly

3

negligent in allowing access to the area that led to Eby's residence and not providing adequate security or alarms.

Each defendant, except Jeffrey Gorton, moved for summary disposition under MCR 2.116(C)(7), arguing, among other things, that plaintiff's action was barred by the three-year statute of limitations for wrongful death actions.[1] In particular, they argued that under MCL 600.5827[2] a claim accrues when the plaintiff is harmed,[3] and the action for wrongful death must be commenced within three years after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims. MCL 600.5805(1); MCL 600.5805(10). Further, while MCL 600.5852 permits an extension of up to three years based on when a personal representative is appointed, that statute was inapplicable here because almost 16 years had passed. Thus, defendants asserted that the suit should have been dismissed as untimely and barred under the statute of limitations. Plaintiff in response asserted that the common-law discovery rule applied to toll the period of limitations. That is, even though the provisions of the period of limitations were

---

[1] MCL 600.5805(10).

[2] MCL 600.5827:

Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

[3] *Boyle v Gen Motors Corp,* 468 Mich 226, 231 n 5; 661 NW2d 557 (2003).

4

silent on tolling based on discovery, until she knew the identity of the killer, the period of limitations was tolled.[4]

The Genesee Circuit Court ruled for plaintiff, adopting her theory that the common-law discovery rule remains viable in Michigan and thus applicable here. The court concluded regarding defendants Buckler and Shirley and Lawrence Gorton that "[a] claim for personal injury accrues when all of the elements are present and can be properly pleaded in a complaint," citing, e.g., *Connelly v Paul Ruddy's Equip Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972). *Trentadue v Buckler Automatic Lawn Sprinkler Co,* opinion of the Genesee Circuit Court, issued October 28, 2003 (Docket No. 02.74145-NZ), p 4. The court also "recognize[d], in some instances, [that the] identity of the killer may be necessary to plead a cause of action." *Id.* Accordingly, it decided that most of plaintiff's claims were not time-barred because plaintiff could not determine that the duties were breached, or that the breaches caused the injuries, until she became aware of the killer's identity in 2002. Regarding Bekofske and MFO, the court granted

---

[4] Regarding plaintiff's inability to discover the identity of the killer, she characterized the facts largely as do Justice Kelly and Justice Weaver in dissent. Most significantly, plaintiff claimed that she could not have discovered her premises liability and security claims against Mott and MFO because the police were convinced that Eby had been murdered by an acquaintance whom she allowed into the apartment. This claim distorts the affidavit of David King, the homicide investigator. King described the method of entry as "undetermined" and attested that the police investigated Eby's acquaintances *and* other persons "who appeared to be suspicious because of their lifestyle." It appears unknown why police did not interview Jeffrey Gorton.

5

their summary disposition motions on the basis that if Mott and MFO had failed to provide adequate security, this claim was known to plaintiff at the time of the killing, and the cause of action could have been brought at that time.[5]

On appeal, the Court of Appeals affirmed in part, reversed in part, and remanded, concluding that the common-law discovery rule tolled the limitations period for *all* plaintiff's claims, including the improper security claims against Bekofske and MFO. 266 Mich App 297; 701 NW2d 756 (2005). The Court of Appeals concluded that the common-law discovery rule tolled the period of limitations because plaintiff was unaware of a cause of action against Buckler, the Gortons, Nyberg, or Bakos until their relationship with the killer became known. Regarding Bekofske and MFO, the Court of Appeals reversed the part of the trial court's judgment that granted summary disposition in their favor. It concluded that the discovery rule applied because until the identity of the killer became known, no causal connection could be discovered between a breach of duty and Eby's death. The Court of Appeals failed to address the absence of the common-law discovery provision in MCL 600.5827. It evidently presumed that the discovery provision could co-exist with the statute and was not abrogated by the statute's enactment.

Buckler, the Gortons, and MFO sought leave to appeal in this Court. We granted leave to appeal to consider whether a common-law discovery rule

---

[5] The claim against Jeffrey Gorton is not in dispute.

6

continues to exist in Michigan or whether MCL 600.5827, which has no common-law discovery provision, is the exclusive means of establishing tolling.[6]

## II. STANDARD OF REVIEW

This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo. *Grimes v Dep't of Transportation,* 475 Mich 72, 76; 715 NW2d 275 (2006). In the absence of disputed facts, we also review de novo whether a cause of action is barred by the applicable statute of limitations. *Joliet v Pitoniak,* 475 Mich 30, 35; 715 NW2d 60 (2006). Finally, we address questions of statutory interpretation de novo. *Grimes, supra* at 76.

## III. ANALYSIS

### A. THE STATUTE OF LIMITATIONS AND ITS EFFECT ON THE COMMON-LAW DISCOVERY RULE

The applicable statute of limitations in a wrongful death case is MCL 600.5805(10),[7] which states: "The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property." Thus, the period of limitations runs three years from "the death or injury."

---

[6] 475 Mich 906 (2006).

[7] MCL 600.5805(10) has been renumbered several times since it was enacted as part of the Revised Judicature Act of 1961. 1961 PA 236. The subsection was also amended to explicitly apply to cases alleging wrongful death in 1978. 1978 PA 495. We will refer to the subsection as subsection 10 throughout this opinion for ease of reference.

7

Moreover, MCL 600.5827 defines the time of accrual for actions subject to the limitations period in MCL 600.5805(10).[8] It provides:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

---

[8] See, e.g., *Joliet, supra* at 40; *Garg v Macomb Co Community Mental Health Services,* 472 Mich 263, 282; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005); *Moll v Abbott Laboratories,* 444 Mich 1, 12; 506 NW2d 816 (1993).

Although this Court has consistently applied the statutes together, Justice Kelly now questions whether MCL 600.5827 applies in cases governed by MCL 600.5805(10). By its terms, § 5827 applies to "cases not covered by" MCL 600.5829 to 600.5838, which are not relevant to this case. Accordingly, this Court has consistently applied § 5827 and § 5805(10) together. *Joliet, supra* at 40; *Garg, supra* at 282; *Moll, supra* at 12. Moreover, the statutes are complementary and easily read together. MCL 600.5827 establishes that periods of limitations run "from the time the claim accrues," which is "the time the wrong upon which the claim was based is done." MCL 600.5805(10) specifies that personal injury and wrongful death actions accrue at the time of "death or injury." Because "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted" under § 5827, the statutes are perfectly consistent. *Boyle v Gen Motors Corp*, 486 Mich 266, 231 n 5; 661 NW2d 577 (2003).

Significantly, Justice Kelly's preferred application of MCL 600.5805(10) by itself would not yield a different result. First, the time of death under § 5805(10) would be marked from the same moment as the time the wrong was done, under MCL 600.5827. Thus, not only are the statutes complementary, they also have precisely the same effect when applied separately. Second, even assuming that § 5805(10) should alone govern, we would be hard-pressed to inject a common-law discovery rule into this statute's plain language, which unambiguously establishes that the "period of limitations is 3 years after the time of the death or injury." Finally, using a discovery rule to avoid the plain language of § 5805(10) presents the same problem as does applying the rule under § 5827; it ignores the remainder of the statutory scheme, which clearly provides for discovery-based tolling when the Legislature deems it appropriate, as further discussed *infra.*

8

This is consistent with MCL 600.5805(10) because it indicates that the claim accrues "at the time the wrong upon which the claim is based was done . . . ." We have, not surprisingly given its clarity, so held in *Boyle v Gen Motors Corp,* 468 Mich 226, 231-232; 661 NW2d 557 (2003), and *Garg v Macomb Co Community Mental Health Services,* 472 Mich 263, 282; 696 NW2d 646 (2005). We have also clearly established that "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted." *Boyle, supra* at 231 n 5.

The Revised Judicature Act, at MCL 600.5838(2), 600.5838a(2), 600.5839(1), and 600.5855, provides for tolling of the period of limitations in certain specified situations. These are actions alleging professional malpractice, MCL 600.5838(2); actions alleging medical malpractice, MCL 600.5838a(2); actions brought against certain defendants alleging injuries from unsafe property, MCL 600.5839(1); and actions alleging that a person who may be liable for the claim fraudulently concealed the existence of the claim or the identity of any person who is liable for the claim, MCL 600.5855. Significantly, none of these tolling provisions covers this situation—tolling until the identity of the tortfeasor is discovered.

Plaintiff contends, however, that, notwithstanding these statutes, when the claimant was unaware of any basis for an action, the harsh result of barring any lawsuit because the period of limitations has expired can be avoided by the operation of a court-created discovery rule, sometimes described as a common-law rule, articulated in *Johnson v Caldwell,* 371 Mich 368, 379; 123 NW2d 785

9

(1963), superseded by statute as stated in *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420, 428 n 2; 329 NW2d 729 (1982). Under a discovery-based analysis, a claim does not accrue until a plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint. *Moll v Abbott Laboratories,* 444 Mich 1, 16-17; 506 NW2d 816 (1993).[9] Accordingly, here, plaintiff argues that her claims did not accrue until she discovered that Gorton was the killer because, before that time, she could not have known of and alleged each element of the claims.[10] We reject this contention because the statutory scheme is exclusive and thus precludes this common law practice of tolling accrual based on discovery in cases where none of the statutory tolling provisions apply.

It is axiomatic that the Legislature has the authority to abrogate the common law. *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). Further, if a statutory provision and the common law conflict,

---

[9] A personal injury claim must allege that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, (3) the breach was the proximate cause of the plaintiff's injuries, and (4) damage. *Moll, supra* at 16.

[10] Justice Weaver makes the same argument but also goes one step further. She acknowledges that, under MCL 600.5827, a claim accrues when "'all of the elements of the cause of action have occurred'" or when "'all of the elements of an action for personal injury, including the element of damage, are present . . . .'" *Post* at 8-9, 15, quoting *Connelly, supra* at 150-151 (emphasis omitted). Justice Weaver then asserts: "At the time of Dr. Eby's death, not all of the elements of a wrongful death action had 'occurred.'" *Post* at 9. To the contrary, clearly each element of plaintiff's negligence claims had occurred at the time of Eby's death;
(continued…)

10

the common law must yield. *Pulver v Dundee Cement Co,* 445 Mich 68, 75 n 8; 515 NW2d 728 (1994).[11]  Accordingly, this Court has observed:

> In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. [*Hoerstman Gen Contracting, supra* at 74, quoting *Millross v Plum Hollow Golf Club,* 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441].[12]

Here, as we have explained, the relevant sections of the Revised Judicature Act comprehensively establish limitations periods, times of accrual, and tolling for civil cases.  MCL 600.5827 explicitly states that a limitations period runs from the time a claim accrues "[e]xcept as otherwise expressly provided."  Accordingly, the

---

(…continued)
indeed, the crux of each claim is that defendants' acts preceded and culminated in Eby's death.

[11] Similarly, see *Sington* v *Chrysler Corp,* 467 Mich 144, 164; 648 NW2d 624 (2002) ("Codification of common-law rules makes those rules of no consequence if they are inconsistent with the codification.")

[12] Justice Weaver's effort at distinguishing *Hoerstman* and *Millross* on the basis of their facts is unavailing.  She points out that the statutory scheme at issue here does not contain precisely the same language as the statutes at issue in those cases.  *Post* at 16-19.  *Hoerstman* and *Millross* do not stand for the proposition that the Legislature is bound to use certain language to convey its intent to abrogate the common law in a given area, however.  To the contrary, these cases direct us to examine the scheme as a whole and ask if it constitutes "'comprehensive legislation prescrib[ing] in detail a course of conduct to pursue and the parties and things affected, and designat[ing] specific limitations and exceptions.'"  *Hoerstman Gen Contracting, supra* at 74, quoting *Millross, supra* at 183.  As Justice Weaver plainly states:  "What is important in conveying [the] intent [to abrogate] is that the legislation be comprehensive."  *Post* at 18.

11

statutes "designate specific limitations and exceptions" for tolling based on discovery, as exemplified by MCL 600.5838, 600.5838a, 600.5839, and 600.5855. The scheme also explicitly supersedes the common law as can be seen in the area of medical malpractice, for instance, where this Court's prestatutory applications of the common-law discovery rule were superseded by MCL 600.5838a, in which the Legislature codified the discovery rule for medical malpractice cases.

Finally, MCL 600.5855 is a good indication that the Legislature intended the scheme to be comprehensive and exclusive. MCL 600.5855 provides for essentially unlimited tolling based on discovery when a claim is fraudulently concealed.[13] If we may simply apply an extrastatutory discovery rule in any case not addressed by the statutory scheme, we will render § 5855 effectively meaningless. For, under a general extrastatutory discovery rule, a plaintiff could toll the limitations period simply by claiming that he reasonably had no knowledge of the tort or the identity of the tortfeasor. He would never need to establish that the claim or tortfeasor had been fraudulently concealed.

---

[13] MCL 600.5855 reads:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

12

Since the Legislature has exercised its power to establish tolling based on discovery under particular circumstances, but has not provided for a general discovery rule that tolls or delays the time of accrual if a plaintiff fails to discover the elements of a cause of action during the limitations period, no such tolling is allowed. Therefore, we conclude that courts may not employ an extrastatutory discovery rule to toll accrual in avoidance of the plain language of MCL 600.5827 and we reject this Court's contrary conclusion in *Chase v Sabin,* 445 Mich 190, 191-192; 516 NW2d 60 (1994).[14] Because the statutory scheme here is

---

[14] This result is also consistent with our recent holding in *Boyle, supra* at 231-232, in which we declined to employ the discovery rule to the plaintiffs' fraud claim based, in part, on the plain language of MCL 600.5827, which also governed accrual in that case.

We note that Justice Weaver, in particular, relies on *Chase* to support her dissenting conclusion that "this case presents the unique situation in which this Court has traditionally applied the discovery rule." *Post* at 11, citing *Stephens v Dixon*, 449 Mich 531, 534-536; 536 NW2d 755 (1995), in turn quoting *Chase, supra* at 196-197. First, the plaintiff in *Chase* alleged that a surgeon negligently injured him during surgery. *Id.* at 192. Therefore, the *Chase* Court's broad observations regarding appropriate use of the discovery rule are arguably dicta when applied beyond the medical malpractice context. Most significantly, the *Chase* Court concluded that use of the discovery rule was particularly appropriate because a medical malpractice plaintiff will typically rely on a hospital or physician's records to prove his claim. *Id.* at 199-200. As Justice Weaver observes, in contexts such as medical malpractice where the rule is typically applied, "'evidentiary records are rarely diminished by the passage of time'" and, therefore, there is less concern for protecting defendants from fading memories and time-flawed evidence. *Post* at 13, quoting *Stephens, supra* at 537. Thus, although we reject the *Chase* Court's use of a discovery rule when not authorized by statute, we also fail to see how the instant case "presents the unique situation in which this Court has traditionally applied the discovery rule[.]" *Post* at 11.

comprehensive, the Legislature has undertaken the necessary task of balancing plaintiffs' and defendants' interests and has allowed for tolling only where it sees fit. This is a power the Legislature has because such a statute of limitations bears a reasonable relationship to the permissible legislative objective[15] of protecting defendants from stale or fraudulent claims. *Gladych v New Family Homes, Inc,* 468 Mich 594, 600; 664 NW2d 705 (2003). Accordingly, the lower courts erred when they applied an extrastatutory discovery rule to allow plaintiff to bring her claims 16 years after the death of her decedent. When the death occurred, the "wrong upon which the claim is based was done." Given this holding, we overrule *Johnson, supra,* and its progeny.

Overruling these cases is the most appropriate course of action because they run directly counter to the legislative scheme. Further, overruling them is not problematic, under *Robinson v Detroit,* 462 Mich 439; 613 NW2d 307 (2000), primarily because, by its nature, the discovery rule does not create expectation or reliance interests. In *Robinson*, we explained that, in deciding whether to overrule wrongly decided cases, we must consider whether "practical real-world dislocations" would result, whether "reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Id.* at 464-466. We have already explained that the statutory law, and its changes over time, cause us to question the validity of court-imposed

---

[15] *Phillips v Mirac,* 470 Mich 415, 436; 685 NW2d 174 (2004).

14

applications of the discovery rule. Most significantly, the nature of the discovery rule contravenes any argument that our decision affects plaintiffs' reliance interests. A plaintiff does not decide to postpone asserting a claim because he relies on the availability of extrastatutory discovery-based tolling. To the contrary, discovery-based tolling is a retroactive mechanism for relief to be used only when a plaintiff could not anticipate his claims. To the extent reliance interests figure into the analysis, it is the expectations of defendants—including those who, as here, may have had as little indication that a claim existed as did the plaintiff—that are harmed when a plaintiff brings claims long after an event occurred. Defendants must, at some point, be able to safely dispose of business records and other seemingly mundane evidence that they would have no reason to expect could exculpate them in litigation.

Finally, our dissenting colleagues' explanations for why we should not overrule cases that employ a common-law discovery rule ignore the central reasoning and result of our decision. Justice Kelly states, for instance, that "[t]he common-law discovery rule has become so embedded in the fabric of Michigan limitations law that the state's jurisprudence will be seriously damaged by destroying it." *Post* at 15. But rather than destroy the discovery rule, we recognize that the Legislature has comprehensively established the circumstances

under which the rule should be applied and has, in the process, rendered use of the rule more uniform and predictable for plaintiffs, defendants and courts alike.[16]

## B. ADDITIONAL RESPONSE TO DISSENTS

First, we reject Justice Kelly's contention in dissent that the statutory scheme evinces the Legislature's intent simply to "ratif[y] prior decisions of this Court applying the common-law discovery rule," *post* at 12, and, therefore, to "implicitly acknowledge[] the applicability of the rule in other types of cases."

---

[16] Although Justice Kelly criticizes us for disregarding precedent, *post* at 9-10, she very recently indicated that she would have been more than willing to overrule precedent she disfavored, e.g. *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004). See *People v Smith,* 478 Mich 292, 322 n 17; 733 NW2d 351 (2007). She also voted to overrule another decision of this Court in *Haynes v Neshewat,* 477 Mich 29, 39; 729 NW2d 488 (2007), overruling *Kassab v Michigan Basic Prop Ins Assn,* 441 Mich 433; 491 NW2d 545 (1992). Therefore, one is naturally tempted to re-inquire, see *Rowland v Washtenaw Co Rd Comm,* 477 Mich 197, 223-228; 731 NW2d 41 (2007) (Markman, J., concurring), whether her ongoing criticism truly concerns our attitudes toward precedent or merely her attitudes toward specific previous decisions of the Court. Justice Kelly points to her positions in recent cases including *Liss v Lewiston-Richards*, *Inc*, 478 Mich 203; 732 NW2d 514 (2007), *Rohde v Ann Arbor Pub Schools,* 479 Mich ___; ___ NW2d ___ (Docket No. 128768, decided July 25, 2007), and *Michigan Citizens for Water Conservation v Nestlé Waters of America, Inc*, 479 Mich ___; ___ NW2d ___ (Docket No. 130802, decided July 25, 2007). She states: "[E]ven though I did not agree with the precedent in these cases, I said nothing about overruling it." *Post* at 11 n 5. Yet, in *Liss,* although she did not expressly advocate overruling precedent, she asserted that the holding of *Smith v Globe Life Ins Co,* 460 Mich 446; 597 NW2d 28 (1999), "should be limited strictly to cases involving the insurance industry." *Liss, supra* at 217 (Kelly, J., dissenting). In *Rohde* and *Nestlé*, although she acknowledged that the cases with which she disagrees are binding precedent, she had no need to advocate for overruling them; she expressly contended that these established cases did not preclude her preferred outcomes in the cases at hand. *Rohde, supra* at ___ (Kelly, J., concurring); *Nestlé, supra* at ___ (Kelly, J., dissenting).

16

*Post* at 13. She concludes that the Legislature has abrogated our decisions only to "limit[] the discovery rule where it saw fit." *Post* at 13. But we see no logical reason to equate the Legislature's "approval of the rule" —by its codification of some of this Court's uses of the rule—with the Legislature's approval of every application of the rule. Justice Weaver similarly suggests that, because the Legislature paid particular attention only to these circumstances, "it is apparent that the Legislature recognized the continuing existence and viability of the common-law discovery rule and saw fit to limit it in certain instances (§§ 5838 and 5838a), but not in all instances." *Post* at 22. Thus, our dissenting colleagues conclude that the Legislature intended merely to limit the rule in some circumstances rather than to establish limited circumstances in which the rule applies.

But the scheme does not, as Justice Kelly asserts, merely "expressly provid[e] that the discovery rule does not apply in professional negligence cases," thus "impl[ying] that it was to apply in all other contexts" under the maxim of *expressio unius est exclusio alterius. Post* at 13 n 7. In drawing this conclusion, Justice Kelly focuses on the first sections of MCL 600.5838 and 600.5838a, which establish general limitations on the use of a discovery rule in professional and medical malpractice cases. MCL 600.5838(1) provides, for example, that a professional malpractice claim

> *accrues* at the time [the professional] discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, *regardless of*

17

*the time the plaintiff discovers or otherwise has knowledge of the claim.* [Emphasis added.]

The second section of this statute, however, explicitly authorizes discovery-based tolling. MCL 600.5838(2) provides that

> an action involving a claim based on malpractice *may be commenced* at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or *within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.* [Emphasis added.]

In other words, the statute simultaneously authorizes *and* limits the circumstances under which tolling is appropriate. The same is true of the other statutes that our dissenting colleagues claim merely limit how the rule applies in certain cases; each statute comprehensively authorizes and limits the use of discovery-based tolling in particular circumstances.[17] Because the statutes

---

[17] MCL 600.5838a(1) provides that a medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(2), in turn, authorizes limited use of the rule, stating: "an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." MCL 600.5838a(2) and (3) round out the statute's comprehensive governance of discovery-based tolling in this area. These sections require that actions commenced on the basis of discovery must be brought within six years of the act or omission unless the claim involves permanent loss of or damage to a reproductive organ resulting in the inability to procreate or discovery of the claim was prevented by the fraudulent conduct of the defendant or his agents.

In a similar vein, MCL 600.5839(1) expressly authorizes plaintiffs to bring suit to recover damages arising out of a defective and unsafe condition of an improvement to real property on the basis of when they discover the defect; such a suit must be brought within "1 year after the defect is discovered or should have

(continued…)

*authorize* use of discovery-based tolling, we cannot agree that "[t]he only possible reason the Legislature would have included this language is to take professional negligence claims outside the scope of the common-law discovery rule." *Post* at 13 n 7. Moreover, the general prohibition on use of the discovery rule in malpractice cases is not "reduced to a redundancy" because it "remove[s] professional negligence claims from the scope of a rule that the Legislature never recognized as existing." *Post* at 13-14 n 7. Rather, in light of this Court's ongoing use of the discovery rule, particularly in the medical malpractice arena, the Legislature pointedly clarified that a malpractice claim *accrues* regardless of when it is discovered, consistent with the mandate in MCL 600.5827, while also prescribing a tolling period for *commencement* of a suit based on discovery.

Most significantly, both dissenting justices' interpretations of the scheme directly contravene the broad mandate in § 5827 that, "[e]xcept as otherwise expressly provided, the period of limitations runs from the time the claim accrues." In accord with this mandate, MCL 600.5838, 600.5838a, 600.5839, and 600.5855 provide that certain actions may be commenced after a claim is discovered, although the claim accrued in the past and the limitations period has run. Thus, these statutes are clearly *expressed exceptions* to the general rule in §

(…continued)
been discovered." The statute also lists certain criteria that justify use of the rule and limits its application to claims brought within "10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement." *Id.*

19

5827 that the limitations period begins running when the harm is done. Indeed, *expressio unius est exclusio alterius*.

MCL 600.5855 also belies the contention that the statutory exceptions merely limit, rather than exclusively authorize, discovery-based tolling under certain circumstances. As we have discussed, MCL 600.5855 provides for essentially *unlimited* tolling based on discovery when a claim is fraudulently concealed. If we may apply an extrastatutory discovery rule in any case not covered by the expressed exceptions, we will render § 5855 effectively meaningless because a plaintiff may toll the limitations period simply by claiming he reasonably had no knowledge of the tort or the identity of the tortfeasor. He would never need to allege fraudulent concealment.

Justice Weaver's argument regarding this issue only serves to strengthen our point. She explains that "the fraudulent concealment provision would not be helpful to this plaintiff, nor to other plaintiffs who, in the absence of fraudulent concealment, are unable to pursue a claim because they did not have the information necessary to establish a claim until after the period of limitation had expired." *Post* at 20. Therefore, she concludes: "Given the distinct need for the common-law discovery rule to assist these innocent plaintiffs, it cannot be said that the continued existence of the discovery rule makes § 5855 superfluous. The two provisions can peacefully co-exist because they serve different purposes." *Post* at 21.

20

To the contrary, the common-law discovery rule fully encompasses the statutory rule allowing tolling based on fraudulent concealment. As described by Justice Weaver, for instance, the common-law rule applied if the "plaintiff did not have enough information to allege" elements of the claim, through no fault of his own. *Post* at 9. The discovery of previously unknown information would therefore permit a claim to be saved by the discovery rule regardless of whether the information was *intentionally* obscured from the plaintiff. Thus, Justice Weaver's interpretation renders the fraudulent concealment statute unnecessary—because the statute's purpose is subsumed by the broader common-law rule—and ignores the Legislature's decision to apply the discovery rule to one class of undiscovered claims but not to all undiscovered claims. Although she attempts to protect innocent plaintiffs, she fails to acknowledge that the Legislature has balanced its desire to protect such plaintiffs against its desire to protect defendants from having to defend stale claims; the outcome of the balancing differs on the basis of the defendant's culpability, or lack thereof, for obscuring the claim.

Finally, we also disagree with Justice Kelly's contention that the lower courts could nonetheless employ a discovery rule here because courts commonly did so in 1986 at the time of Eby's death. She cites MCL 600.5869, which states: "[a]ll actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry." *Post* at 21. MCL 600.5827 and the three-year limitations period for wrongful death actions under MCL 600.5805 have existed in their current forms

21

since 1961 and 1978, respectively.[18] Moreover, the related statutes defining and limiting the use of discovery rules under particular circumstances have also existed since 1986.[19] Thus, the relevant statutory law has not changed since 1986. Regardless of whether we agree with Justice Kelly that § 5869 encompasses both statutory and common law, she presents no authority or explanation for how a unique, equitable, inherently backward-looking doctrine such as the discretionary common-law discovery rule can be meaningfully applied as "the law under which the right accrued." First, a court could not have invoked the discovery rule in 1986 when the "right accrued" because it was unnecessary; the limitations period had not run. Second, § 5869 does not *require* use of the rule, as Justice Kelly presumes. *Post* at 22 n 13. Rather, the rule is judge-made law that has been applied on a case-by-case basis. In essence, Justice Kelly's theory would render our opinion paradoxically meaningless because our holding would not apply to events occurring any time before the day we decide this case; although a claim that accrues tomorrow will be subject to the relevant statutory period and exceptions, a claim that accrued in 1986 may be brought at any time in the future, indefinitely.

Most significantly, Justice Kelly's focus on MCL 600.5869 obscures the crux and effect of her position; she is asking us to refrain from applying our

---

[18] 1961 PA 236; 1978 PA 495.

[19] MCL 600.5838 (amended by 1975 PA 142 to address discovery-based tolling); MCL 600.5838a (enacted by 1986 PA 178 with language addressing

(continued…)

holding in this case to this case. This position violates the general rule that decisions are retroactive unless "exigent circumstances" justify the "extreme measure" of prospective-only application. *Devillers v Auto Club Ins Ass'n,* 473 Mich 562, 586; 702 NW2d 539 (2005) (internal quotations omitted). Even when a decision meets the threshold criterion for prospective application because it clearly establishes a new principle of law, we must consider: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice." *Pohutski v City of Allen Park,* 465 Mich 675, 696; 641 NW2d 219 (2002). Here, prospective-only application is inappropriate. First, the very purpose of our holding is to respect limits the Legislature has placed on plaintiffs' abilities to revive suits relying on events occurring in the distant past; prospective application is therefore directly opposed to our resolve to honor the Legislature's policy choice. Moreover, as we already explained, the very nature of the discovery rule defies any reliance on its operation. Finally, the administration of justice is not significantly affected because the rights and interests of plaintiffs and defendants are opposed in these matters; although plaintiffs may be denied relief for stale claims, defendants and the judiciary are relieved from having to defend and decide cases based on deteriorated evidence.

---

(…continued)
discovery); MCL 600.5839(1) (amended by 1985 PA 188 to address discovery-based tolling); MCL 600.5855 (enacted by 1961 PA 236).

23

For similar reasons, our decision does not "throw[] Michigan into topsy-turvy land, where a person's legal claim dies before it is born." *Post* at 23. A discovery rule is only necessary when a plaintiff's claim has accrued and he cannot bring suit within the limitations period. Nothing in our decision cuts off a plaintiff's right to bring suit before the wrong is done; for, until the wrong is done, a claim does not accrue under MCL 600.5827.

## C. DUE PROCESS

Plaintiff also asserts that, in construing MCL 600.5827 as we do, we deprive her of due process[20] because she cannot seek damages for her injury. While she does not dispute that in normal circumstances three years, along with the statutorily allowed extension for personal representatives, is reasonable, she asserts that it is unreasonable if she had no way of knowing the identity of the perpetrator of the wrong. That is, she argues that it is unconstitutional for the Legislature to deprive a plaintiff who has an injury—but who, through no fault of his own, has no knowledge of who injured him—of a cause of action.

Plaintiff's reasoning is rooted in the following passage from *Price v Hopkin,* 13 Mich 318, 324 (1865):

> [T]he legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. . . . It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought

---

[20] US Const, Am XIV; Const 1963, art 1, § 17.

and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law. [Citations omitted.]

Justices Kelly and Weaver also rely on *Price* for their contention that our holding violates due process. They misconstrue the holding in *Price*, however, which does not apply to this case.

*Price* does not address the discovery rule. Rather, there, the Court was faced with a new legislative enactment that shortened the limitations period during which a plaintiff could bring a suit for ejectment from land. *Id.* at 322-323. When the act took effect, it applied to all future cases that had not yet been filed. *Id.* at 323. Accordingly, the ability to bring suit was extinguished for a limited class of plaintiffs who, before the act was passed, had relied on the former limitations period and expected to be able to bring suit in the future. *Id.* at 323, 324-328. The *Price* Court concluded that, under the circumstances, due process was violated because a legislature may not "take away an existing right of action, by a statute of limitations which allows no time in which to bring suit after the statute has come into operation." *Id.* at 324.

Accordingly, the specific holding in *Price* has no bearing on this case, in which the limitations period has remained consistent since the time plaintiff's causes of action accrued.[21] A plaintiff's right to due process is not violated

---

[21] Justice Weaver argues that, in *Chase, supra* at 196, this Court cited *Price* as general support for continued use of the discovery rule. *Post* at 24-25. The

(continued…)

25

because a desired remedy is no longer available; every statute of limitations deprives plaintiffs of a remedy at the moment the period of limitations expires. Indeed, in *Price*, the newly shortened limitations period was not problematic, in and of itself, as a matter of law. *Price, supra* at 323-324. Rather, it was only unconstitutional as applied to the plaintiff. *Id.* at 328. The general rule expressed in *Price* remains:

> The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. [*Price, supra* at 324.]

Given the Legislature's unquestioned power, the only question we must ask—as with any due process analysis of a statute that involves neither a suspect classification such as race, alienage, ethnicity or national origin, nor a deprivation

---

(…continued)
reference to *Price* in *Chase* directly precedes a discussion of the general proposition—rooted in MCL 600.5827 and explained in *Connelly, supra*—that a negligence claim accrues *not* when a defendant breaches a duty, but when a plaintiff is injured. Any other conclusion "could potentially bar a plaintiff's legitimate cause of action before the plaintiff's injury." *Chase, supra* at 196. We agree that this potential effect could "'declare the bread stale before it is baked,'" *id.* at 197 (citation omitted), and raise the due process concerns described in *Price*. We reject the *Chase* Court's interpretation of *Price* only to the extent *Chase* may be read, as Justice Weaver suggests, to assert that a plaintiff's due process rights are violated under *Price* if an otherwise reasonable limitations period expires before a plaintiff is *aware* of the claim. Such an interpretation of *Price* would eschew the *Price* Court's assertion that it is fully within the power of the Legislature to enact reasonable periods of limitations.

of a fundamental right—is whether it "'bears a reasonable relation to a permissible legislative objective.'" *Phillips v Mirac, Inc,* 470 Mich 415, 436; 685 NW2d 174 (2004) (citation omitted). Statutes of limitations "serve the permissible legislative objective of relieving defendants of the burden of defending claims brought after the time so established." *O'Brien v Hazelet & Erdal,* 410 Mich 1, 14; 299 NW2d 336 (1980).[22] This Court has also explained that "[i]f the Legislature can entirely abrogate a common-law right, surely it may provide that a particular cause of

---

[22] See, also, *Stephens v Dixon*, 449 Mich 531, 536; 536 NW2d 755 (1995) (brackets in original):

"While providing equitable relief to plaintiffs otherwise barred by a strict application of the statute of limitations, the discovery rule also threatens legitimate interests of the defendant which the statute protects. While it may be harsh to bar the action of a plaintiff who, through no fault of his own, did not discover his injury until after the running of the statute, it is also unfair . . . to compel a defendant to answer a charge arising out of events in the distant past. The discovery rule tends to undermine the sense of security that the statute of limitations was designed to provide, namely, that at some point a person is entitled to put the past behind him and leave it there." [Olsen, *The discovery rule in New Jersey: Unlimited limitation on the statute of limitations,* 42 Rutgers LR 205, 211-212 (1989).]

In her dissent, Justice Kelly asserts: "The purpose of a limitations statute is to 'penalize plaintiffs who have not been industrious in pursuing their claims,' not to eliminate a valid cause of action when the plaintiff is without fault." *Post* at 19, quoting *Lemmerman v Fealk,* 449 Mich 56, 65-66; 534 NW2d 695 (1995). She ignores that limitations periods are *also* aimed at relieving defendants from the burden of defending stale claims. Justice Weaver acknowledges the dual purposes of limitations periods. When she asserts that the equities favor plaintiff in this case, however, Justice Weaver merely distinguishes *Stephens, supra,* in which the discovery rule was clearly inapplicable because the plaintiff knew of her injury and its cause before the limitations period expired. *Post* at 8, 13-14.

27

action can no longer arise unless it accrues within a specified period of time." *Id.* at 15.

In light of the permissible legislative objectives of statutes of limitations, *O'Brien, supra,* the statutes applicable to this case unquestionably further a legitimate legislative aim. The Legislature obviously weighed carefully the competing interests of plaintiffs and defendants when it limited a plaintiff's ability to bring suit under MCL 600.5827 and MCL 600.5805, but protected plaintiffs by affording a limited extension for personal representatives, MCL 600.5852, as well as a discovery-based tolling provision when a defendant fraudulently conceals claims, MCL 600.5855. Given the three-year limitations period and its potential extensions, we cannot say that the Legislature failed to "afford a reasonable time within which suit may be brought." *Price, supra* at 325. Accordingly, our holding does not violate plaintiff's due process rights.

## D. EQUITABLE TOLLING UNDER *BRYANT v OAKPOINTE VILLA NURSING CENTRE, INC*

Finally, we decline plaintiff's request to employ a "pinpoint application of equity" to her claims so as to render them timely, on the unique facts of this case. In making this request, plaintiff relies largely on *Bryant v Oakpointe Villa Nursing Centre, Inc*, 471 Mich 411; 684 NW2d 864 (2004). In *Bryant,* we addressed the difference between actions sounding in ordinary negligence and those sounding in medical malpractice. We concluded that some of the plaintiff's claims sounded in malpractice, and would have been barred by the malpractice limitations period.

28

*Id.* at 432. Nonetheless, we allowed the particular plaintiff's malpractice claims to proceed with the negligence claims because

> [t]he distinction between actions sounding in medical malpractice and those sounding in ordinary negligence is one that has troubled the bench and bar in Michigan . . . [and the p]laintiff's failure to comply with the applicable statute of limitations is the product of an understandable confusion about the legal nature of her claim, rather than a negligent failure to preserve her rights. [*Id.* at 432.]

As we clarified in *Devillers v Auto Club Ins Ass'n,* 473 Mich 562, 590 n 65; 702 NW2d 539 (2005), however, our use of equity in *Bryant* is limited to those circumstances when the courts themselves have created confusion. In *Bryant,* the use of equity was appropriate because of "the preexisting jumble of convoluted caselaw through which the plaintiff was forced to navigate." *Devillers, supra* at 590 n 65. Here, in contrast, plaintiff has not detrimentally relied on confusing, pre-existing case law. By its very nature, the discovery rule does not lend itself to detrimental reliance; plaintiffs seeking to invoke it do not wait to bring suit because they expect to rely on the rule, but because they claim that external factors prevented them from discovering their claims.

Perhaps most significantly, in *Bryant,* no controlling statute negated the application of equity; rather, this Court's caselaw determined whether a claim sounded in medical malpractice or ordinary negligence. *Devillers, supra* at 590 n 65. To the contrary, in the instant case, the statutory scheme controls limitations periods, accrual, and tolling, just as the no-fault act, specifically MCL 500.3145(1), controlled the outcome in *Devillers. Id.* As we opined in *Devillers,*

29

*supra* at 591, if courts are free to cast aside a plain statute in the name of equity, even in such a tragic case as this, then immeasurable damage will be caused to the separation of powers mandated by our Constitution.[23]  Statutes lose their meaning if "an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity."  *Id.*  Significantly, such unrestrained use of equity also undermines consistency and predictability for plaintiffs and defendants alike.

## IV. CONCLUSION

We hold that the plain language of MCL 600.5827 precludes the use of a broad common-law discovery rule to toll the accrual date of claims to which this statute applies.  Here, the wrong was done when Eby was raped and murdered in 1986.  MCL 600.5827 was in effect at that time.  Accordingly, plaintiff's claims accrued at the time of Eby's death.  The Legislature has evinced its intent that, despite this tragedy, the defendant-appellants may not face the threat of litigation 16 years later, merely because plaintiff alleges she could not reasonably discover the facts underlying their potential negligence until 2002.

We reverse the judgment of the Court of Appeals as well as the circuit court's order denying the defendant-appellants' motions for summary disposition

---

[23] Const 1963, art 3, § 2.

under MCR 2.116(C)(7).  We remand to the circuit court for further proceedings consistent with this opinion.

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT


DAYLE TRENTADUE, as Personal
Representative of the Estate of
MARGARETTE F. EBY, Deceased,

  Plaintiff-Appellee,

v             No. 128579

JEFFREY GORTON, VICTOR NYBERG,
TODD MICHAEL BAKOS, MFO
MANAGEMENT COMPANY, and CARL
F. BEKOFSKE, as Personal Representative
of the Estate of RUTH R. MOTT, Deceased,

  Defendants,
and

BUCKLER AUTOMATIC LAWN
SPRINKLER COMPANY, SHIRLEY
GORTON and LAURENCE W. GORTON,

  Defendants-Appellants.

_____

DAYLE TRENTADUE, as Personal
Representative of the Estate of
MARGARETTE F. EBY, Deceased,

  Plaintiff-Appellee,

v             Nos. 128623, 128624, and
                128625

BUCKLER AUTOMATIC LAWN
SPRINKLER COMPANY, SHIRLEY
GORTON, LAURENCE W. GORTON,
JEFFREY GORTON, VICTOR NYBERG,
TODD MICHAEL BAKOS and CARL L.

BEKOFSKE, as Personal Representative of
the Estate of RUTH R. MOTT, Deceased,

       Defendants,

and

MFO MANAGEMENT COMPANY,

       Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I dissent from the majority's conclusion that MCL 600.5827 exclusively governs the time of accrual of plaintiff's claims. I would affirm the Court of Appeals decision applying the common-law "discovery rule,"[1] which operates to toll the statutory period of limitations when a plaintiff could not have reasonably discovered the elements of a cause of action within the limitations period.

Further, I concur with Justice Kelly that under the test set forth in *Robinson v Detroit*,[2] the discovery rule "has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations."[3]

---

[1] *Johnson v Caldwell,* 371 Mich 368, 379; 123 NW2d 785 (1963). See also *Moll v Abbott Laboratories,* 444 Mich 1, 16-17; 506 NW2d 816 (1993).

[2] 462 Mich 439; 613 NW2d 307 (2000).

[3] *Id.* at 466.

2

FACTS

In 1981, Dr. Margaret Eby moved to Flint, Michigan, and began leasing a two-story gatehouse located near the entrance to the Ruth R. Mott estate (Mott Estate). Evidently Mrs. Mott lived a hermitic lifestyle on the Mott Estate grounds known as "Applewood." Virtually all her personal dealings were handled by the Mott Family Office (MFO).[4]

The gatehouse was remotely located some distance from Mrs. Mott's home and the gatehouse basement contained the valves and piping that supported the sprinkler system for the entire Mott Estate grounds. In January 1985, Dr. Eby complained to Mrs. Mott about break-ins she experienced at the gatehouse, including an incident on January 23, 1985, during which Dr. Eby's compact disc player and purse were stolen. Paul Yager, then the chief executive officer of MFO, responded to Dr. Eby's complaint on behalf of Mrs. Mott. In response to Dr. Eby's complaint and her request for installation of a security alarm system, Mrs. Mott had new deadbolt locks installed. No alarm system was installed.

Nearly two years later, late in the evening on November 7, 1986, Dr. Eby returned to the gatehouse after a dinner party. Two friends accompanied her to the gatehouse door and waited until she was safely inside before departing. Two days later, Dr. Eby was found dead in her gatehouse. She had been attacked, raped, and

---

[4] MFO was formed in 1969 to attend to the financial and personal needs of Ruth Mott, her children, and her nieces and nephews.

knifed to death. The police investigation of Dr. Eby's death focused primarily on persons who might have been known to Dr. Eby because there appeared to be no sign of forced entry. Police interviewed a number of suspicious persons, but there was never any evidence developed that implicated those persons in Dr. Eby's death. The evidence collected included deoxyribonucleic acid (DNA) evidence (semen) from Dr. Eby's body, as well as a partial fingerprint from a faucet inside the gatehouse.

In 1991, Nancy Ludwig, an airline attendant, was attacked, raped, and knifed to death in a hotel near the Detroit Metropolitan Airport. The circumstances surrounding her death were strikingly similar to Dr. Eby's, and at the request of Dr. Eby's son, the police reopened the investigation into Dr. Eby's death. After additional DNA testing on evidence collected from both victims, and after comparing fingerprints left at both crime scenes, investigators were able to determine that Jeffrey Gorton committed both murders.[5]

Before Dr. Eby's death in 1986, Jeffrey Gorton was an employee of Buckler Automatic Lawn Sprinkler Company (Buckler), which serviced the Moss Estate's sprinkler system. Buckler was owned by Jeffrey Gorton's parents, Laurence and Shirley Gorton. Jeffrey Gorton was provided access to the sprinkler

---

[5] Gorton was apprehended in Florida and sentenced to life in prison on February 13, 2003, after pleading no contest to first-degree murder, MCL 750.316, and first-degree criminal sexual conduct, MCL 750.520b.

4

system controls housed in the gatehouse basement through Mott Estate staff members Victor Nyberg and Todd Bakos, both allegedly employed by MFO.

On August 2, 2002, six months after discovering the identity of Dr. Eby's murderer through the arrest of Gorton, plaintiff Dayle Trentadue, daughter of Dr. Eby and personal representative for the estate of Margarette F. Eby (estate of Eby), filed a wrongful death complaint against multiple defendants. The defendants included Buckler, its owners Laurence and Shirley Gorton, Jeffrey Gorton, Ruth Mott, MFO, and MFO employees Nyberg and Bakos. The complaint alleged, among other things, negligent hiring and negligent supervision of Dr. Eby's killer, Jeffrey Gorton.[6]

With regard to her claims against the Mott Estate, MFO, and Nyberg and Bakos for negligent hiring and negligent supervision, plaintiff alleges that on November 5, 1986, MFO employees Nyberg and Bakos provided Gorton with unsupervised access to the gatehouse basement to winterize the sprinklers, and that

---

[6] With regard to her claims against Buckler and the Gortons for negligent hiring and negligent supervision, plaintiff alleges that in 1985, a year before Gorton killed Dr. Eby, Gorton's parents were aware that Gorton had just been released from a Florida prison after serving time for assault crimes. Evidently Jeffrey Gorton had a history of violence against women and his felony convictions in Florida involved physical assaults on women.

His paternal grandparents even appeared for his sentencing in Florida and begged the judge to permit Gorton to get psychiatric help for his violent outbursts against women. Yet, despite this knowledge, the Gortons employed their son in the family business and sent him to service the sprinklers at the Mott Estate.

it was by this means that Gorton was subsequently able to come back on November 7 to attack and kill Dr. Eby.[7]  Moreover, despite Dr. Eby's earlier and repeated requests to defendants Ruth Mott and MFO to improve the security of the gatehouse, plaintiff alleges that defendants were negligent in failing to provide adequate security, thereby permitting Jeffrey Gorton's access to the gatehouse.

All defendants filed motions for summary disposition, but the circuit court granted summary disposition only to defendants Mott and MFO, and only on one count (count VIII, which alleged that the premises were unsafe).  The parties appealed, and the Court of Appeals reversed summary disposition for MFO on count VIII, affirmed in all other respects, and remanded the matter to the circuit court for further proceedings.[8]  In so ruling, the Court of Appeals concluded that the discovery rule tolled the period of limitations because plaintiff had no basis to assert claims against any defendant until the murderer's culpability was discovered.

Defendants appealed, and we granted leave, directing the parties to include among the issues to be briefed:

---

[7] Plaintiff suggests that when Nyberg and Bakos gave Gorton access on November 5, they failed to re-secure the gatehouse basement access so that Gorton was then later able to enter the gatehouse on November 7 through the unlocked basement door.

[8] *Trentadue v Buckler Automatic Lawn Sprinkler Co,* 266 Mich App 297; 701 NW2d 756 (2005).  The decision was initially unpublished, but the court later granted plaintiff's publication request.

6

[W]hether the Court of Appeals application of a common-law discovery rule to determine when plaintiff's claims accrued is inconsistent with or contravenes MCL 600.5827, and whether previous decisions of this Court, which have recognized and applied such a rule when MCL 600.5827 would otherwise control, should be overruled. [*Trentadue v Buckler Automatic Lawn Sprinkler Co,* 475 Mich 906 (2006).]

ANALYSIS

MCL 600.5805(10) provides that in wrongful death actions, "[t]he period of limitations is 3 years after the time of the death or injury . . . to recover damages for the death of a person . . . ." Further, MCL 600.5827 states:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Both of the above provisions appear in the Revised Judicature Act, MCL 600.5801 *et seq.*, in the chapter entitled "Limitation of Actions." The policy considerations behind the enactment of statutes of limitations were noted by this Court in *Lothian v Detroit*:[9]

> They encourage the prompt recovery of damages, *Buzzn v Muncey Cartage Co*, 248 Mich 64, 67; 226 NW 836 (1929); they penalize plaintiffs who have not been industrious in pursuing their claims, *First National Bank of Ovid v Steel*, 146 Mich 308; 109 NW 423 (1906); they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision", *Jenny v Perkins*, 17 Mich 28, 33 (1868); they relieve

_____

[9] 414 Mich 160, 166-167; 324 NW2d 9 (1982).

defendants of the prolonged fear of litigation, *Bigelow* [*v Walraven*], *supra*, [392 Mich at] 576 [;221 NW2d 328 (1974)]; they prevent fraudulent claims from being asserted, *Bailey v Glover*, 88 US (21 Wall) 342; 22 L Ed 636 (1875); and they "'remedy . . . the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert'". *Lenawee County v Nutten,* 234 Mich 391, 396; 208 NW 613 (1926).

In *Lemmerman v Fealk,*[10] we further noted that "'the primary purposes behind statutes of limitations are: 1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale and fraudulent claims.'" And certainly, had plaintiff herein failed to diligently pursue her claim, or attempted to file a fraudulent claim, this Court would not hesitate to summarily apply these statutes of limitations to bar plaintiff's suit.

However, neither of these policy considerations will be furthered by application of these provisions given that plaintiff was deprived of the evidence necessary to even establish that a claim existed until long after the period of limitations had expired. It is precisely in situations such as the one plaintiff here faces that this Court has applied the discovery rule to prevent a statute of limitations from foreclosing on a plaintiff's right to bring suit. And, in fact, the law in this state in 1986, the year of Dr. Eby's murder, was that a cause of action did not accrue until the elements forming the basis of the complaint could be pleaded:

---

[10] 449 Mich 56, 65; 534 NW2d 695 (1995) (citation omitted).

In the case of an action for damages arising out of tortious injury to a person, the cause of action accrues when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.

Those elements are four in number.

(1) The existence of a legal duty by defendant toward plaintiff.

(2) The breach of such duty.

(3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.

(4) The plaintiff must have suffered damages.[11]

At the time of Dr. Eby's death, not all of the elements of a wrongful death action had "occurred." The majority disagrees with this contention, *ante* at 10 n 10, arguing that each element of plaintiff's claim *had* "occurred" at the time Dr. Eby was murdered; however, while I concede that the *events* had "occurred," the fact is that plaintiff did not have enough information to allege that Dr. Eby's death was the result of the negligent acts of Ruth Mott, MFO and its employees, and Buckler Automatic Sprinkler Co and its employees and owners. In other words, the information available to plaintiff at the time of Dr. Eby's death did not put plaintiff on notice that a claim could be made against the various defendants. Plaintiff was not alerted to the availability of a claim to be made against defendants until plaintiff learned the identity of the killer and the killer's connection to defendants. Plaintiff was not aware of the killer's identity, nor was

---

[11] *Connelly v Paul Ruddy's Co,* 388 Mich 146, 150; 200 NW2d 70 (1972).

9

plaintiff aware of the connection the killer had to any of the potential defendants. Consequently, there was no basis for pleading that any duty was owed to the plaintiff by any potential defendant. The evidence collected tended to show that Dr. Eby was killed by an acquaintance, given that there was no sign of forced entry into the gatehouse. Because the police evidently theorized that Dr. Eby knew the killer, their investigation focused on Dr. Eby's known acquaintances.

Consequently, the police never questioned killer Jeffrey Gorton, the Buckler employee, nor was there ever any investigation into the relationship between Buckler, MFO, and Ruth Mott. Dr. Eby's murder remained unsolved until years after the period of limitations had expired; thus, plaintiff lacked the essential piece of evidence—the fact that Buckler employee Jeffrey Gorton attacked, raped, and killed Dr. Eby. It was only upon discovering this critical information that plaintiff was able to establish, after reopening the investigation, that the elements necessary to bring a wrongful death claim were in fact all present and could be alleged in a complaint.

And while defendants have asserted that despite the absence of the critical information pertaining to how Dr. Eby in fact died, plaintiff could still have adequately alleged a general negligence claim within the statutory period, had she done so, her claim likely would have been deemed legally deficient given that the criminal evidence collected at the time of Dr. Eby's death tended to indicate that Dr. Eby herself allowed the killer into her own home.

As we stated in *Stephens v Dixon*,[12] this case presents the unique situation in which this Court has traditionally applied the discovery rule:

> In Michigan, the limitation period for ordinary negligence actions such as the case at bar is three years. MCL 600.5805(8); MSA 27A.5805(8). The most complicated problem associated with statutes of limitation, and the problem presented in this case, is that of determining when they begin to run. MCL 600.5805(8); MSA 27A.5805(8) provides that "[t]he claim accrues at the time . . . the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827; MSA 27A.5827. We have held that the term "wrong," as used in the accrual provision, refers to the date on which the plaintiff was harmed by the defendant's negligent act, not the date on which the defendant acted negligently. *Connelly v Paul Ruddy's Equipment Repair & Service Co*, 388 Mich 146; 200 NW2d 70 (1972). Otherwise, a plaintiff's cause of action could be barred before the injury took place.

> Another accrual problem associated with statutes of limitation occurs when a plaintiff is injured but is unaware of the injury. If the statute of limitation begins to run at the time of injury, it is possible that plaintiffs with perfectly valid claims could be prevented, through no fault of their own, from bringing their actions within the specified period of limitation. In situations such as these, the common law has developed equitable rules to mitigate the harsh effects of the statute of limitation. One such exception is the discovery rule. The discovery rule, based on principles of fundamental fairness, "was formulated to avoid the harsh results produced by commencing the running of the statute of limitations before a claimant was aware of any basis for an action." *Hammer v Hammer*, 142 Wis 2d 257, 264; 418 NW2d 23 (1987).

> We explained the discovery rule in *Chase v Sabin*, 445 Mich 190, 196-197; 516 NW2d 60 (1994). In *Chase*, a 1963 eye operation failed because of an event that occurred during the operation. The plaintiff was not told of the occurrence. In 1988, while pursuing an unrelated worker's compensation claim, the plaintiff's attorney obtained a hospital record of the surgery and learned of the event. We stated:

---

[12] 449 Mich 531, 534-536; 536 NW2d 755 (1995).

"Similarly, because statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances. Last term . . . we held that the discovery rule controls the date a pharmaceutical products liability action accrues. 'If the three-year period of limitation began to run at the time of the defendant's breach, most, if not all, claims would be barred before the plaintiff had reason to know of the injury and the cause of the injury. Such an interpretation seeks "to declare the bread stale before it is baked."'" (Citation omitted.)

We note that while the discovery rule serves as an important limit on a mechanical and unjust termination of a legitimate cause of action, there can be equitable problems with the imposition of the discovery rule as well. As one commentator has stated:

"While providing equitable relief to plaintiffs otherwise barred by a strict application of the statute of limitations, the discovery rule also threatens legitimate interests of the defendant which the statute protects. While it may be harsh to bar the action of a plaintiff who, through no fault of his own, did not discover his injury until after the running of the statute, it is also unfair . . . to compel a defendant to answer a charge arising out of events in the distant past. The discovery rule tends to undermine the sense of security that the statute of limitations was designed to provide, namely, that at some point a person is entitled to put the past behind him and leave it there. [Olsen, *The discovery rule in New Jersey: Unlimited limitation on the statute of limitations*, 42 Rutgers L R 205, 211-212 (1989).]"

Given the competing interests of balancing the plaintiff's right to bring a claim once a plaintiff learns of the injuries with the defendant's right not to have to defend a stale claim, the *Stephens* Court went on to discuss when to apply the discovery rule:

In the present case, the plaintiff proposes that we take a step beyond the rule of *Chase* [*v Sabin, supra*]. There, we held that "the discovery rule governs the accrual date for negligence claims, pursued against hospitals and their agents, which are similar to

malpractice claims." *Id.* at 201. By contrast, the present case involves allegations of ordinary negligence.

In *Moll v Abbott Laboratories*, 444 Mich 1, 12-13; 506 NW2d 816 (1993), we noted this Court's adoption of the discovery rule for medical malpractice cases in *Johnson v Caldwell*, 371 Mich 368; 123 NW2d 785 (1963), in negligent misrepresentation cases in *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974), and in products liability actions for asbestos-related diseases in *Larson v Johns-Manville Sales Corp*, 427 Mich 301; 399 NW2d 1 (1986). In *Moll*, we extended the application of the discovery rule to products liability actions for pharmaceutical products liability actions. Defendant correctly points out that in these contexts, evidentiary records are rarely diminished by the passage of time. Hence, as we stated in *Larson*, *supra* at 312, quoting *Eagle-Pitcher Industries, Inc v Cox*, 481 So2d 517, 523 (Fla App, 1985), "the concern for protecting defendants from 'time-flawed evidence, fading memories, lost documents, etc.' is less significant in these cases." That is not the case in automobile tort liability cases, where the evidence for liability defense is often dependent on fading memories of individual witnesses.

We hold that the discovery rule is not available in a case of ordinary negligence where a plaintiff merely misjudges the severity of a known injury. [*Id.* at 537.]

Ultimately, the *Stephens* Court declined to extend the discovery rule in that case because, unlike plaintiff herein, the plaintiff in *Stephens* not only *knew she was injured, but knew the cause of her injury* before the period of limitations expired. The plaintiff in *Stephens* had argued that even though she knew she was injured, she did not know the true extent of her injuries until after the period of limitations had expired. Citing *Connelly, supra,* the Court declined to apply the discovery rule and restated the rule that "a cause of action for tortious injury

13

accrues 'when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.'"[13]

In contrast to the plaintiff in *Stephens,* plaintiff Trentadue, as personal representative of the estate of Eby, did not have the information available to bring a wrongful death claim until she knew *who* the killer was and *how* the killer managed to get access to Dr. Eby's private residence. Essentially, the "injury," that is, the wrongful death, was not apparent until 16 years after Dr. Eby's death. Nor was the "cause" of that injury apparent until after the period of limitations had expired.

In determining when the wrongful death claim accrued, we turn to MCL 600.5827:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the *claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results*. [Emphasis added.]

The statute does not define "wrong" or "damage," but this Court has already examined these terms and provided the following analysis:

> Defendants argue that the statutory provision "* * * the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results" means, in the context of this case, that claims against them are barred, since breach of duty claimed against them must have occurred prior to March 15, 1965, more than 3 years before action was commenced.

---

[13] *Stephens, supra* at 539, quoting *Connelly, supra* at 150.

14

Defendants contend that the word *wrong* refers to an act of carelessness or negligence in repairing or handling the press. By their view, the word *damage* refers to the personal injury suffered by the plaintiff on May 12, 1965, the day that the press malfunctioned.

Defendants claim that interpreting the word *wrong* to mean *actionable wrong, tort, harm or injury* is to broaden the meaning of that word, and render the word *damage* entirely meaningless.

It is argued by the plaintiff that under such a view, her claim is barred before she was hurt. She would never have been able to commence an action at all.

By that interpretation, plaintiff says, the statute is not one of limitation but one of abolition, completely destroying her cause of action before it arises.

Defendants counter by pointing out that the statute of limitations is a statute of repose, designed to protect defendants from stale claims; that this is an industrial state and it is therefore reasonable to conclude that the Legislature intended to protect industrial and commercial interests by fixing a certain limit upon exposure to liability for faulty products and workmanship.

We cannot accept the defendants' view. However desirable the stated objectives might be, it is doubted that such was the legislative purpose. The statute in question is the Revised Judicature Act. It was drawn, as defendants point out, by a distinguished committee of lawyers, known as the Joint Committee on Michigan Procedural Revision. The purpose of the Act was to effect procedural improvements, not advance social, industrial or commercial policy in substantive areas.

*The word* damage *is not rendered meaningless in a fair reading of the statute, even where the word* wrong *is understood to mean actionable wrong*.

It is quite common in personal injury actions to allege and prove future loss of earning capacity, future medical expenses, future pain and suffering. Indeed all of these elements must be alleged and proved in a single cause of action. *Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run*. Later damages may result, but they give rise to no new cause of

15

action, nor does the statute of limitations begin to run anew as each item of damage is incurred. [*Connelly*, *supra* at 150-151 (emphasis added).]

Thus, for purposes of a wrongful death action in which a plaintiff seeks damages for tortious injuries and death suffered by the decedent, the time that the claim first accrues is the point in time when "all of the elements of an action for personal injury, including the element of damage, are present . . . ." Because plaintiff, through no fault of her own, lacked the information necessary to establish the elements of wrongful death until 16 years after Dr. Eby's death, the claim did not accrue until plaintiff became aware of that information.

Today, the majority overrules *Johnson* and its progeny, effectively depriving plaintiff, and future potential injured parties, from seeking compensation when their injuries are not known to them before the statutory period of limitations expires. As a result, statutes of limitations will be imposed not on those who would sit on their rights, but on the innocent, who, through no fault of their own, have been deprived of the information necessary to bring an otherwise valid claim.

The majority's justification for the abolition of the discovery rule is that with the enactment of MCL 600.5801 *et seq.*, the Legislature created a comprehensive statutory scheme meant to supersede any existing common law dealing with the subject matter. *Ante* at 11-12. Yet, the authority cited in support of the majority's argument is unpersuasive. The majority points to *Hoerstman*

16

*Gen Contracting, Inc v Hahn*[14] as the basis for its conclusion that MCL 600.5801

*et seq.* were enacted to abrogate the common-law discovery rule. However, in

*Hoerstman*, the statute at issue was Article 3 of the Uniform Commercial Code,

MCL 440.3101 *et seq.* The question we faced was whether after the enactment of

MCL 440.3311, the common-law defense of accord and satisfaction was

eliminated. In finding that the Legislature did so intend, we stated:

> As already noted, *Article 3 of the UCC is comprehensive. It is intended to apply to nearly every situation involving negotiable instruments. See MCL 440.3102. The language contained in MCL 440.3311 completely covers the details of accord and satisfactions.*
>
> MCL 440.3311(3) and (4) contain exceptions or conditions. Their enumeration eliminates the possibility of their being other exceptions under the legal maxim *expressio unius est exclusio alterius*. The maxim is a rule of construction that is a product of logic and common sense. This Court long ago stated that no maxim is more uniformly used to properly construe statutes.
>
> *Therefore, the language of the statute shows that the Legislature covered the entire area of accord and satisfactions involving negotiable instruments. It clearly intended that the statute would abrogate the common law on this subject.* [*Id.* at 74-75 (citations omitted; emphasis added).]

The rationale from *Hoerstman* is not applicable to the statutory scheme at

issue here because MCL 600.5801 *et seq.* lack the comprehensive enactment

language found in the negotiable instruments statute. Importantly, MCL 440.3102

defines the scope of the statute and its reach, whereas the same cannot be said of

---

[14] 474 Mich 66, 74; 711 NW2d 340 (2006), quoting *Millross v Plum Hollow Golf Club,* 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.

17

MCL 600.5805. In particular, MCL 440.3102(1) provides: "*This article applies to negotiable instruments.* It does not apply to money, to payment orders governed by article 4a, or to securities governed by article 8." (Emphasis added.) Chapter 58 of the Revised Judicature Act does not contain a comparable provision defining the scope of the chapter.

The majority claims that *Hoerstman* and *Millross* are not distinguishable on this basis, *ante* at 11 n 12, because these cases do not establish that the Legislature must use certain language to abrogate the common law. However, as the *Hoerstman* Court correctly noted, "[t]he Legislature has the authority to abrogate the common law."[15] And "[w]hen it does so, it should speak in no uncertain terms."[16] Thus, language defining the scope of a chapter is just one example of the kind of language that the Legislature has used to convey its intent to abrogate the common law. What is important in conveying such intent is that the legislation be comprehensive.

For example, the *Hoerstman* Court cited *Millross, supra,* for the proposition that comprehensive legislation abrogates the common law.[17] *Millross* provides even stronger evidence that the statutory scheme herein is distinct from the statutory schemes at issue in both *Hoerstman* and *Millross*. Specifically, in

---

[15] *Id.* (citation omitted).

[16] *Id.* (citations omitted).

[17] *Hoerstman, supra* at 74.

18

*Millross*, this Court noted that abrogation was appropriate because it was clear that "the Legislature intended the dramshop act to be a *complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy* for any action arising under 'dramshop-related facts.'"[18] "Indeed," the Court went on to note that

> the Legislature has amended the act to expressly codify this intent in 1986 PA 176, which provides in pertinent part, "*This section provides the exclusive remedy* for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor." MCL 436.22(11); MSA 18.993(11). [*Millross, supra* at 186 (emphasis added).]

In contrast, nowhere in Chapter 58, Limitations of Actions, is there a provision establishing that that chapter is exclusive. Nor is there any language evidencing an intent by the Legislature to abolish the common-law discovery rule in order to provide "complete and self-contained" legislation limiting the time in which actions could be brought and thereby replace the discovery rule.

The majority asserts, *ante* at 12, that because the Legislature included MCL 600.5855,[19] the application of the common-law discovery rule will render § 5855

---

[18] *Millross, supra* at 185-186.

[19] MCL 600.5855 states:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of

(continued…)

meaningless.  I disagree, given that in order for a plaintiff to avail himself or herself of § 5855, there must still be evidence of *fraudulent* concealment.  Here, where there does not appear to be evidence of fraudulent concealment on the part of any of the named defendants, plaintiff would not be able to use this provision.[20]  Thus, the fraudulent concealment provision would not be helpful to this plaintiff, nor to other plaintiffs who, in the absence of fraudulent concealment, are unable to pursue a claim because they did not have the information necessary to establish a claim until after the period of limitations had expired.

---

(…continued)

> the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

[20] This Court discussed fraudulent concealment in *International   Union United Auto Workers v Wood,* 337 Mich 8, 13-14; 59 NW2d 60 (1953):

> Fraudulent concealment was defined in *De Haan v. Winter*, 258 Mich 293, 296[; 241 NW 923 (1932), superseded by statute on other grounds *Morgan v Taylor*, 434 Mich 180 (1990)], as meaning the "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent."

> \* \* \*

> Fraudulent concealment is more than mere silence. *McNaughton v. Rockford State Bank*, 261 Mich 265, 268[; 246 NW 84 (1933)].

> \* \* \*

> . . . Concealment by one other than the one sought to be charged is not within the prohibition of the statute. See *Stevenson v Robinson*, 39 Mich 160 [1878].

Further, I disagree with the majority's assertion that a narrowly drawn statute purports to change an entire body of common law in the absence of the Legislature explicitly stating that it so intends. The majority's assertion incorrectly assumes that a narrowly tailored statute, which is silent with regard to the broad scope of the discovery rule, somehow changes the entire application of the discovery rule.[21]

Given the distinct need for the common-law discovery rule to assist these innocent plaintiffs, it cannot be said that the continued existence of the discovery rule makes § 5855 superfluous. The two provisions can peacefully co-exist because they serve different purposes.

Indeed, it is evident that when the Legislature wanted to supersede the common-law discovery rule, it did so specifically with regard to certain claims. For example, MCL 600.5838 establishes the time in which a malpractice claim accrues:

> (1) Except as other provided in section 5838a, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time

---

[21] While the majority asserts incorrectly that the fraudulent concealment statute is "subsumed," *ante* at 21, by the discovery rule because the discovery rule encompasses both fraudulent concealment claims and nonfraudulent concealment claims, the fact that the discovery rule has a broader application than the fraudulent concealment statute does not mean that the Legislature sought to allow the use of the discovery rule only with respect to fraudulent concealment claims. Nor does the continued existence of the discovery rule vitiate the fraudulent concealment statute, which merely represents the Legislature's decision to specify how the common-law discovery rule applies to fraudulent concealment claims.

21

that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, *regardless of the time the plaintiff discovers or otherwise has knowledge of the claim*.

(2) Except as otherwise provided in section 5838a, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, *or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.* The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. *A malpractice action which is not commenced within the time prescribed by this subsection is barred.* [Emphasis added.][22]

In contrast to the malpractice limitation provisions, which indicate with specificity how the discovery rule should be applied, the wrongful death limitation provisions at issue here do not bar the use of the common-law discovery rule, nor do they limit the application of the discovery rule in certain instances. Given the co-existence of these various limitation provisions, it is apparent that the Legislature recognized the continuing existence and viability of the common-law discovery rule and saw fit to limit it in certain instances (§§ 5838 and 5838a), but not in all instances. Specifically, MCL 600.5805 does not contain any provisions limiting the application of the discovery rule, but instead provides:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, *after the claim first accrued* to the plaintiff or to someone through whom the

---

[22] MCL 600.5838a contains a comparable accrual provision abolishing the availability of the discovery rule for medical malpractice claims filed under that statute.

plaintiff claims, the action is commenced within the periods of time prescribed by this section.

* * *

(10) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

Ultimately, if plaintiff is denied her day in court on the basis of the majority's interpretation of MCL 600.5827, plaintiff will be denied due process. This Court has held that while the Legislature has the power to enact statutes of limitations, those provisions will be deemed unconstitutional if they unreasonably deprive a plaintiff from bringing an otherwise valid claim:

The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. A statute which forbids any suit for the recovery of lands is not a statute of limitations, but a statute to pass to adverse possessors the title of all other claimants; and its validity cannot depend upon the name bestowed upon it. It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought; and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law. [*Price v Hopkin,* 13 Mich 318, 324-325 (1865) (citations omitted).]

23

More recently, this Court cited *Price* to support this Court's long history of applying the discovery rule when a statute of limitations would wrongfully deprive plaintiff of a reasonable time in which to bring a claim:[23]

> A statute of limitation should provide plaintiffs with a reasonable opportunity to commence suit. For over one hundred years, this Court has sought to fulfill this purpose, construing statutes accordingly.
>
> *  *  *
>
> Our adherence to this principle resulted in our holding that the term "wrong," as stated in the accrual statute, designated the date on which the plaintiff was harmed by the defendant's negligent act, as opposed to the date the defendant acted negligently. *Connelly v Paul Ruddy's Equipment Repair & Service Co*, 388 Mich 146; 200 NW2d 70 (1972). Necessity dictated such a conclusion because an opposite interpretation could potentially bar a plaintiff's legitimate cause of action before the plaintiff's injury.
>
> Similarly, because statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances. Last term, in *Moll*, *supra* at 13, we held that the discovery rule controls the date a pharmaceutical products liability action accrues. "If the three-year period of limitation began to run at the time of the defendant's breach, most, if not all, claims would be barred before the plaintiff had reason to know of the injury and the cause of the injury. Such an interpretation seeks 'to declare the bread stale before it is baked.'" (Citation omitted.) The same reasoning compelled our application of the discovery rule to products liability actions premised on asbestos related injuries, *Larson*, *supra*. In *Southgate School Dist v West Side Construction Co*, 399 Mich 72, 82; 247 NW2d 884 (1976), we held that the discovery rule governs the date a breach of warranty claim accrues, providing plaintiffs with an adequate opportunity to bring suit. See also *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974) (the discovery rule governs the accrual of negligent

---

[23] *Chase v Sabin,* 445 Mich 190, 195-197; 516 NW2d 60 (1994).

24

misrepresentation cases), and *Dyke v Richard*, 390 Mich 739; 213 NW2d 185 (1973) (the discovery rule governs the accrual of medical malpractice cases).

The majority opinion disputes the applicability of *Price,* yet this Court adopted the rationale from *Price* in both *Moll* and *Chase* on the basis that in each case, *where the plaintiff was not aware of the injury or its cause*, the discovery rule was appropriately invoked to permit the plaintiff to go forward on an otherwise time-barred claim. A statute of limitations that effectively deprives a plaintiff of the substantive right to bring an action is unreasonable.[24]

CONCLUSION

As a result of the majority's conclusion that MCL 600.5827 exclusively governs the time of accrual of plaintiff's claims and that the discovery rule is therefore no longer available to a plaintiff who could not reasonably have discovered the elements of a cause of action, the majority has succeeded in depriving plaintiff, and those similarly situated, from having their day in court.

---

[24] *Taxpayers Allied for Constitutional Taxation v Wayne Co,* 450 Mich 119, 125-126; 537 NW2d 596 (1995) ("The one-year limitation is not in the class of limitation periods that are 'so harsh and unreasonable in their consequences that they effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right.' *Forest v Parmalee*, 402 Mich 348, 359; 262 NW2d 653 (1978), citing *Buscaino v Rhodes*, 385 Mich 474; 189 NW2d 202 (1971).").

While the *Taxpayers* Court upheld the one-year statute of limitations at issue, what is notable about that decision is the fact that the Court acknowledged that when a limitations period effectively deprives a plaintiff of judicial access, it will not be upheld. That is the very situation we face here if this Court deprives plaintiff of the right to apply the common-law discovery rule.

Because I disagree with the majority's conclusion that with the enactment of the Revised Judicature Act, the Legislature sought to abrogate the discovery rule, I would affirm the Court of Appeals decision applying the common-law discovery rule and tolling the period of limitations where plaintiff could not have reasonably discovered the elements of a wrongful death cause of action within the limitations period.

Elizabeth A. Weaver
Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

DAYLE TRENTADUE, as Personal
Representative of the Estate of
MARGARETTE F. EBY, Deceased,

       Plaintiff-Appellee,

v                                        No. 128579

JEFFREY GORTON, VICTOR NYBERG,
TODD MICHAEL BAKOS, MFO
MANAGEMENT COMPANY, and CARL
F. BEKOKSKE, as Personal Representative
of the Estate of RUTH R. MOTT, Deceased,

       Defendants,
and

BUCKLER AUTOMATIC LAWN
SPRINKLER COMPANY, SHIRLEY
GORTON, and LAURENCE W. GORTON,

       Defendants-Appellants.
_____

DAYLE TRENTADUE, as Personal
Representative of the Estate of
MARGARETTE F. EBY, Deceased,

       Plaintiff-Appellee,

v                                Nos. 128623, 128624, and
                                      128625

BUCKLER AUTOMATIC LAWN
SPRINKLER COMPANY, SHIRLEY
GORTON, LAURENCE W. GORTON
JEFFREY GORTON, VITOR NYBERG,
TODD MICHAEL BAKOS, and CARL L.

BEKOFSKE, as Personal Representative of
the Estate of RUTH R. MOTT, Deceased,

    Defendants,

and

MFO MANAGEMENT COMPANY,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

 In this wrongful death action, the majority frames the issue as whether the common-law discovery rule tolls the statutory period of limitations or whether MCL 600.5827 alone governs when plaintiff's claims accrued. It concludes that MCL 600.5827 alone controls.

 I strongly disagree with this decision for three reasons. First, MCL 600.5827 does not apply to this case. Second, even if it did apply, the majority commits a tragic mistake by abandoning Michigan's decades-old common-law discovery rule. Third, even accepting the majority's decision to abolish the discovery rule from now on, this particular plaintiff should be allowed to claim the benefits of the rule. Accordingly, I respectfully dissent.

FACTS

 This case arises from the murder of Mrs. Margarette Eby. From 1981 to 1986, she rented the gatehouse on the Mott Estate (Applewood) where she was found dead on November 9, 1986.

2

During that five-year period, Mrs. Eby experienced occasional break-ins at the gatehouse and complained about them to Ruth Mott. Ruth Mott was Mrs. Eby's landlord. She also lived at Applewood. Mrs. Mott's affairs were handled by the MFO (Mott Family Office) Management Company, which acted on her behalf in virtually every aspect of her business and personal life, including Applewood. The responses that Mrs. Eby received from letters written to Mrs. Mott in 1986 regarding break-ins at the gatehouse was typified by the following:

> While Mrs. Mott regrets the occurrence of last Wednesday night, it seems apparent that no system would have prevented your loss when the keys to make the system effective were left in your unlocked car in front of the house. Further, when you leave the gate open frequently and fail to provide visual security through drags, curtains or blinds, unnecessary temptation to unwelcome intruders is evident.

On November 7, 1986, Mrs. Eby attended a dinner party with three friends. Two of them accompanied her home, arriving at Applewood sometime after 11:00 p.m. Mrs. Eby's companions observed her attempt to unlock the front door. When she was unable to do so, she asked her friends to walk her to the side door. She was able to open the side door and her companions saw her lock the door before they left.

Two days later, the gatehouse door was found open. What was discovered inside has been described by the Flint Police Department officers who arrived at the scene as perhaps the most gruesome murder scene they had ever encountered. Mrs. Eby's body was found in her upstairs bedroom. She had been attacked, raped, and knifed to death.

3

The physical evidence provided little of value. Besides a partial fingerprint on a bathroom faucet, the police uncovered virtually nothing to link the crime to a particular individual. As a result, it appears that the Flint Police Department pursued the only theory that seemed to suit the murder scene, that Mrs. Eby voluntarily allowed the killer into her home. However, because Mrs. Eby had not been killed by an acquaintance, this theory proved fruitless. It is unclear why the police never considered that a complete stranger might have been Mrs. Eby's killer.

What no one knew at the time was that the MFO had given the killer, Jeffrey Gorton, access to the common area beneath Mrs. Eby's home. Gorton was a lawn service employee of Buckler Automatic Lawn Sprinkler Company (Buckler). Two days before Mrs. Eby was raped and murdered, Gorton arrived at Applewood to perform sprinkler winterization. The MFO supervised the process and gave Gorton unsupervised access to the gatehouse basement. It is believed that, while in the house, Gorton unlocked an entry point that allowed him to reenter the building on the night of the murder.

Gorton was first identified as a suspect when, about 16 years later, Mrs. Eby's son recognized the similarities between his mother's murder and the murder of Northwest Airlines flight attendant Nancy Ludwig. Alerted to the similarities, the police eventually conducted deoxyribonucleic acid (DNA) testing on evidence collected from both victims. It showed that the same man killed both women. The fingerprint found on the faucet was also reexamined, and more sophisticated

4

fingerprint techniques revealed that it belonged to Jeffrey Gorton, who was then living in Florida. A police surveillance operation resulted in gathering a DNA sample from Gorton that matched the samples retrieved from both victims.

On February 8, 2002, Jeffrey Gorton was arrested and charged with murder. On January 6, 2003, he pleaded no contest to a charge of murdering Mrs. Eby more than 16 years earlier. He is currently serving a life sentence for the crime.

On August 2, 2002, Mrs. Eby's estate filed a wrongful death complaint against Mrs. Mott's estate (Mrs. Mott died in 1999), the MFO, MFO employees Todd Bakos and Victor Nyberg, Buckler, Jeffrey Gorton, and Gorton's parents, Shirley and Laurence Gorton, who owned and operated Buckler. In the complaint, plaintiff alleged that (1) Jeffrey Gorton killed plaintiff's decedent, (2) Mrs. Mott, the MFO, Bakos, and Nyberg gave Jeffrey Gorton unsupervised access to the decedent's home, (3) Mott and the MFO were responsible on a respondeat superior theory for the negligence of Bakos and Nyberg, (4) Mrs. Mott and the MFO had a duty but failed to provide adequate security for the residence despite the decedent's repeated requests for it and notice of prior criminal activity at the site, (5) Buckler and Shirley and Laurence Gorton breached their duty to conduct adequate employment investigations to determine if prospective employees presented any danger, (6) Shirley and Laurence Gorton failed to supervise Jeffrey when they knew or should have known he was a threat, (7) and Shirley and Laurence Gorton had respondeat superior liability because they put Jeffrey in a position to rape and kill the decedent.

5

Each defendant, except Jeffrey Gorton, filed a motion for summary disposition, arguing that the claims were barred by the statute of limitations. Genesee Circuit Judge Robert M. Ranson ruled on the motions on October 28, 2003. With the exception of the claim against the MFO and Mrs. Mott's estate that were premised on a generalized duty to keep Mrs. Eby safe, the motions were denied. The trial court ruled that, because plaintiff did not know who killed Mrs. Eby before 2002, plaintiff did not know that someone had breached a duty. Hence, plaintiff lacked knowledge of the causation component of the claims until 2002.

The Court of Appeals granted defendants' applications for leave to appeal. In a unanimous, published opinion, the Court affirmed the part of the trial court's decision that denied defendants' motions for summary disposition. But it reversed the part that granted summary disposition to the MFO and Mrs. Mott's estate on the claim alleging failure to provide adequate security. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 266 Mich App 297, 299; 701 NW2d 756 (2005). The panel found that the common-law discovery rule tolled the statute of limitations with respect to all the claims. It ruled that plaintiff could not have been aware of a possible cause of action against defendants until Jeffrey Gorton was identified as the killer. *Id.* at 303-305.

This Court granted defendants' application for leave to appeal, directing the parties "to include among the issues to be briefed whether the Court of Appeals application of a common-law discovery rule to determine when plaintiff's claims

6

accrued is inconsistent with or contravenes MCL 600.5827, and whether previous decisions of this Court, which have recognized and applied such a rule when MCL 600.5827 would otherwise control, should be overruled." 475 Mich 906 (2006).

STANDARD OF REVIEW

In the absence of disputed facts, whether a cause of action is barred by a statute of limitations is a question of law that we review de novo. *Boyle v Gen Motors Corp*, 468 Mich 226, 229-230; 661 NW2d 557 (2003). We also review de novo a trial court's decision on a motion for summary disposition. *Ostroth v Warren Regency, GP, LLC,* 474 Mich 36, 40; 709 NW2d 589 (2006).

MCL 600.5827 DOES NOT APPLY TO PLAINTIFF'S CLAIMS

This Court asked the parties to answer whether the common-law discovery rule conflicts with MCL 600.5827 and, if so, whether decisions of this Court recognizing the rule should be overruled. MCL 600.5827 is Michigan's accrual statute. It states:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

In deciding that the common-law discovery rule conflicts with § 5827, a majority of this Court errs by deciding that § 5827 applies to plaintiff's claims. Because I find that § 5827 is not implicated by this case, I conclude that this Court

7

overreaches and unnecessarily decides that the common-law discovery rule is inapplicable when § 5827 applies.

All tort causes of action are governed by a statute of limitations. MCL 600.5805 is the statute that governs personal injury actions. The specific subsection that applies to plaintiff's claims is MCL 600.5805(10). It provides:

> The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

Subsection 10 differs from the other subsections of § 5805. The other subsections provide a specific period during which a case must be filed. But they do not provide an accrual period.[1] When these subsections apply, § 5827 determines when the limitations period begins to run. Unlike these subsections, subsection 10 provides not only a specific period for filing (within 3 years), it provides when the action accrues (the time of death or injury).

Given that § 5805(10) contains its own accrual provision, whenever § 5805(10) is applicable, one need not consider § 5827. Indeed, § 5827 states that its accrual provision is to be applied "[e]xcept as otherwise expressly provided." When § 5805(10) controls, the accrual of the limitations period is "otherwise expressly provided." Hence, because § 5827 does not apply, it is unnecessary for

---

[1] Examples of these other subsections illustrate this point: § 5805(2) specifies only that "[t]he period of limitations is 2 years for an action charging assault, battery, or false imprisonment." Similarly, § 5805(5) provides that "the period of limitations is 2 years for an action charging malicious prosecution."

this Court to address whether the discovery rule is applicable when § 5827 applies, and this Court overreaches by answering that question.[2]

## THIS COURT SHOULD NOT OVERRULE ITS OWN PRIOR DECISIONS RECOGNIZING THE COMMON-LAW DISCOVERY RULE

As demonstrated earlier in this opinion, MCL 600.5827 does not apply to plaintiff's claims. But, if it did, the issue would be whether the common-law discovery rule saves plaintiff's claims from the running of the statutory period of limitations or whether § 5827 alone determines when plaintiff's claims accrued. The majority has decided that plaintiff's claims cannot be saved by the common-law discovery rule and has overruled the prior decisions of this Court that recognized the rule. In so doing, it has wiped out caselaw with a foundation

---

[2] The majority recognizes that MCL 600.5805(10) provides both the specific statutory period of limitations and the date when that period begins to run. It follows that the majority also implicitly recognizes that MCL 600.5827 has no application to this case. Yet, it proceeds to decide the case as if MCL 600.5827 applies. Of course, this makes it possible to use this case to decide whether the common-law discovery rule conflicts with MCL 600.5827. Reaching out to decide an issue that need not be decided is generally considered a form of judicial activism.

Apparently, the majority deems it appropriate to decide whether the discovery rule can save a claim when MCL 600.5827 otherwise applies because the result would be the same under MCL 600.5827 and MCL 600.5805(10). Regardless of whether this is true, it is well established that a court should only decide issues that are necessary to resolve the case at hand. Because MCL 600.5827 does not apply, the case should not be decided as if it did, regardless of whether the same result would apply under either MCL 600.5827 or MCL 600.5805(10). The more prudent course would be to decide this case under MCL 600.5805(10). The Court should wait for a case implicating MCL 600.5827 to decide whether the discovery rule can save a plaintiff's claims from the running of the period of limitations when § 5827 would otherwise apply.

stretching back well over 100 years.[3]  Yet, each of the factors articulated in

*Robinson v Detroit*[4] for deciding when it is appropriate to overrule the precedent

of this Court counsel in favor set by retaining those decisions.[5]

---

[3] See the discussion of this Court's recognition of the fundamental right of access to the courts on pages 15-16 of this dissent.

[4] 462 Mich 439; 613 NW2d 307 (2002).

[5] The four justices who are in the majority in this case were also in the majority in *Robinson*.  Looking back, one must question the majority's statement in *Robinson* that stare decisis is generally "'the preferred course.'"  *Id.* at 463 (citation omitted).  This majority has never relied on the doctrine to uphold a prior decision of this Court.

The majority attempts to turn the argument around and questions "whether [my] ongoing criticism truly concerns [my] attitude[] toward precedent or merely [my] attitude[] towards specific previous decisions of the Court."  *Ante* at 16 n 16.  In support of this allegation, the majority cites its own opinion in *People v Smith*, 478 Mich 292; 733 NW2d 351 (2007), and my opinion in *Haynes v Neshewat*, 477 Mich 29; 729 NW2d 488 (2007).  My opinions in these cases are easily distinguishable from a decision like the majority's that eradicates a rule with a foundation stretching back well over 100 years.  In *Smith*, the majority overruled *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984).  I preferred to retain *Robideau*.  My position in *Smith* does not support a claim that I do not respect precedent.  And in *Haynes*, I wrote the unanimous majority opinion.  The opinion carefully considered the *Robinson* factors and concluded that no factor counseled against overruling our decision in *Kassab v Michigan Basic Prop Ins Ass'n*, 441 Mich 433; 491 NW2d 545 (1992).  *Kassab* interpreted the Civil Rights Act to allow discriminatory behavior.  We decided that it would be inappropriate to retain an erroneous interpretation of an act meant to protect against discrimination, solely because some individuals may rely on the decision to discriminate.  Every member of the Court agreed.

Rather than look to *Smith* and *Haynes*, the majority would do better to look to my recent opinions in *Liss v Lewiston-Richards*, Inc, 478 Mich 203; 732 NW2d 514 (2007), *Rohde v Ann Arbor Pub Schools,* 479 Mich ___; ___ NW2d ___ (Docket No. 128768, decided July 25, 2007), and *Michigan Citizens for Water Conservation v Nestlé Waters of America, Inc*, 479 Mich ___; ___ NW2d ___ (Docket No. 130802, decided July 25, 2007).

(continued…)

THE *ROBINSON* FACTORS

The *Robinson* factors are used to determine when it is appropriate to overrule the precedent of this Court. The first is whether the earlier decision was wrongly decided. *Id.* at 464. Finding that an earlier decision was wrongly decided is not the end of the inquiry, however. *Id.* at 465. The Court must also weigh the effects of overruling the decision. *Id.* at 466. This consideration involves a review of whether the decision "defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Id.* at 464.

---

(…continued)

In *Liss* I stated, "[G]iven the language and purpose of the [Michigan Consumer Protection Act, MCL 445.901 *et seq*.], I believe that this Court interpreted the exemption correctly in [*Attorney General v*] *Diamond Mortgage* [414 Mich 603; 327 NW2d 805 (1982)] and incorrectly in *Smith* [*v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999)]. Even so, because I do not think the compelling interests necessary to overrule a prior decision of this Court are present, I do not advocate overruling *Smith*." *Liss*, 478 Mich at 226 (Kelly, J., dissenting). In *Rohde*, I stated "I recognize with regret that this Court's decisions in *Lee* [v *Macomb Co Bd of Comm'rs*, 464 Mich 726; 629 NW2d 900 (2004)] and *Nat'l Wildlife Federation* [*v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004)] now constitute binding precedent." *Rohde*, 479 Mich at ___ (Kelly, J., dissenting). And in *Nestlé*, I wrote "Justice Weaver reaches the opposite conclusion. In so doing, she rejects the standing test adopted by the majority. . . . While I agree with Justice Weaver's conclusion and her analysis of these decisions, I also recognize that *Lee* and *Nat'l Wildlife Federation* now constitute binding precedent of this Court." *Nestlé*, 479 Mich at ___ (Kelly, J. dissenting). Hence, even though I did not agree with the precedent in these cases, I said nothing about overruling it. The majority cannot point to a single case where, having expressed its disagreement with precedent, it has not overruled it or signaled its intent to overrule it.

11

The first question, therefore, is whether this Court's prior decisions recognizing the common-law discovery rule were wrongly decided. The majority claims that the language of MCL 600.5827 indicates that the Legislature did not intend to allow plaintiffs to claim the benefit of the common-law discovery rule when § 5827 applies. I disagree. The majority erroneously ignores deliberate actions of the Legislature that have recognized and ratified prior decisions of this Court applying the common-law discovery rule. These actions signify the Legislature's approval of the rule.

The common-law discovery rule has been a part of Michigan limitations law for many years and has been applied in a variety of contexts.[6] And after this Court recognized the discovery rule, the Michigan Legislature twice passed statutes that expressly limit the operation of the rule.

MCL 600.5838 and MCL 600.5838a describe how the limitations period operates in professional negligence cases. The Legislature added language to both of these statutes specifying that the period of limitations applies "regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." This demonstrates that the Legislature recognizes the discovery rule and is aware of

_____

[6] See, e.g., *Johnson v Caldwell*, 371 Mich 368; 123 NW2d 785 (1963) (rule applied in medical malpractice cases); *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974) (rule applied in negligent misrepresentation cases); *Larson v Johns-Manville Sales Corp*, 427 Mich 301; 399 NW2d 1 (1986) (rule applied in products liability cases); *Moll v Abbott Laboratories*, 444 Mich 1; 506 NW2d 816 (1993) (rule applied in pharmaceutical products liability cases).

what it needs to do to prevent the rule from applying in particular cases. Therefore, MCL 600.5838 and MCL 600.5838a are important because they demonstrate that the Legislature has limited the discovery rule where it saw fit.

More importantly § 5838 and § 5838a represent legislative acceptance of the discovery rule. By specifically limiting the discovery rule in professional negligence cases, the Legislature has implicitly acknowledged the applicability of the rule in other types of cases. As a result, in professional negligence cases, a plaintiff may no longer claim the benefit of the common-law discovery rule. But, the Legislature has not prohibited application of the rule outside the areas addressed in § 5838 and § 5838a.[7]

---

[7] The majority claims that there is no "reason to equate the Legislature's 'approval of the rule'—by its codification of some of this Court's uses of the rule—with the Legislature's approval of every application of the rule." *Ante* at 17. Yet, the well-established maxim of *expressio unius est exclusio alterius*, which this majority has often invoked in deciding cases, states that the Legislature's mention of one thing implies the exclusion of all others. E.g., *Miller v Chapman Contracting,* 477 Mich 102; 730 NW2d 462 (2007); *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003). By expressly providing that the discovery rule does not apply in professional negligence cases, the Legislature implied that it was to apply in all other contexts.

The majority implies that MCL 600.5838 and MCL 600.5838a support its position. In both of these statutes, the Legislature specifically limited the operation of the common-law discovery rule by providing that the period of limitations described in these sections applies "regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." The only possible reason the Legislature would have included this language is to take professional negligence claims outside the scope of the common-law discovery rule. But, as a result of the majority's decision, this language is reduced to a redundancy. When a "plaintiff discovers or otherwise has knowledge of the claim" is completely irrelevant if there is no common-law discovery rule. The majority has decided that the

(continued…)

13

Given that the actions of the Legislature strongly suggest its approval of most of this Court's prior decisions recognizing the common-law discovery rule, the rule should not be discarded. However, even if one believes that earlier cases applying the rule were wrongly decided, it does not follow that these cases must be overruled. *Robinson*, 462 Mich at 465. Rather, stare decisis is generally "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Id.* at 463 (citation omitted).

Before jettisoning precedent, this Court must determine "whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 757; 641 NW2d 567 (2002). In assessing these reliance interests, "the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would

(…continued)
Legislature wrote this language in order to remove professional negligence claims from the scope of a rule that the Legislature never recognized as existing.

The majority claims that MCL 600.5838(2) undercuts my position because that section provides a statutory discovery period. The Legislature's decision to provide a statutory discovery period does nothing to weaken my position. Through MCL 600.5838(1), the Legislature took professional negligence claims outside the scope of the common-law discovery rule. It was entirely consistent for the Legislature to provide a statutory discovery period. In so doing, it took
(continued…)

14

produce not just readjustments, but practical real-world dislocations." *Robinson*, 462 Mich at 466. The common-law discovery rule has become so embedded in the fabric of Michigan limitations law that the state's jurisprudence will be seriously damaged by destroying it.

This Court has recognized a fundamental right of access to courts for a great many years. As it stated in 1877, "[e]very man is entitled to his day in court before his rights can be finally disposed of, and even the Legislature could not deprive him of the right." *Ehlers v Stoeckle*, 37 Mich 260, 262-263 (1877). The genesis of Michigan's common-law discovery rule goes back even further and can be traced to Justice Cooley over 140 years ago:

> The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy; all remedy whatsoever may be taken away. . . . It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought. [*Price v Hopkin*, 13 Mich 318, 324 (1865).]

The discovery rule, based on principles of fundamental fairness, "'was formulated to avoid the harsh results produced by commencing the running of the statute of

---

(…continued)
some of the sting out of removing professional negligence claims from the scope of the common-law rule.

15

limitations before a claimant was aware of any basis for an action.'" *Stephens v Dixon*, 449 Mich 531, 535; 536 NW2d 755 (1995) (citation omitted).

Elimination of the common-law discovery rule will have a drastic, adverse effect on plaintiffs' rights in Michigan. Cutting off plaintiffs' actions before plaintiffs even know they have a cause of action is the very definition of a "practical real-world dislocation." And people will lose confidence in the courts when they learn that the courts deny them compensation for their injuries simply because it took too long to discover their causes.

Aside from the real-world dislocation created by abolishing the common-law discovery rule, there are other factors to consider in determining whether to overrule the prior decisions of this Court. They include whether the decisions defy practical workability and whether changes in the law or the facts no longer justify the questioned precedents. *Robinson*, 462 Mich at 464. It has not been shown that the discovery rule is unworkable. To the contrary, the near universal acceptance of this rule around the country is a strong indication of its workability.[8] And no

---

[8] In addition to Michigan, 35 states plus the District of Columbia have embraced the discovery rule. See, e.g., Alaska: *Hanebuth v Bell Helicopter Int'l*, 694 P2d 143 (Alas, 1984). Arkansas: *State v Diamond Lakes Oil Co*, 347 Ark 618; 66 SW3d 613 (2002). California: *Norgart v Upjohn Co*, 21 Cal 4th 383; 981 P2d 79; 87 Cal Rptr 2d 453 (1999). Colorado: *Rauschenberger v Radetsky*, 745 P2d 640 (Colo, 1987). Connecticut: *Champagne v Raybestos-Manhattan, Inc*, 212 Conn 509; 562 A2d 1100 (1989). Delaware: *In re: Asbestos Litigation, West Trial Group*, 622 A2d 1090 (Del Super Ct, 1992). Florida: *Johnson v Szymanski*, 368 So 2d 370 (Fla, 1979). Georgia: *King v Seitzingers, Inc*, 160 Ga App 318; 287 SE2d 252 (1981). Hawaii: *Yoshizaki v Hilo Hosp*, 50 Hawaii 150; 433 P2d 220 (1967). Indiana: *Wehling v Citizens Nat'l Bank*, 586 NE2d 840 (Ind, 1992). Iowa:

(continued…)

16

facts or law have changed to call into question those cases recognizing the discovery rule. Indeed, the Legislature's decision to abolish the rule solely in the context of professional negligence cases indicates its approval of this Court's decisions that have applied the rule in other contexts.

It is the majority's decision to abolish the common-law discovery rule that threatens to defy practical workability by leading to absurd results and constitutional violations. This Court has held that "[s]tatutes should be construed

---

(…continued)
*Roycroft v Hammons*, 203 F Supp 2d 1053 (SD Iowa, 2002). Louisiana: *Harvey v Dixie Graphics, Inc*, 593 So 2d 351 (La, 1992). Maine: *Johnston v Dow & Coulombe, Inc*, 686 A2d 1064 (Me, 1996). Maryland: *Georgia-Pacific Corp v Benjamin*, 394 Md 59; 904 A2d 511 (2006). Minnesota: *Johnson v Winthrop Laboratories Div of Sterling Drug, Inc*, 291 Minn 145; 190 NW2d 77 (1971). Mississippi: *Sweeney v Preston*, 642 So 2d 332 (Miss, 1994). Nebraska: *Condon v AH Robins Co*, 217 Neb 60; 349 NW2d 622 (1984). Nevada: *Siragusa v Brown*, 114 Nev 1384; 971 P2d 801 (1998). New Hampshire: *Big League Entertainment, Inc v Brox Industries*, 149 NH 480; 821 A2d 1054 (2003). New Jersey: *Mancuso v Mancuso*, 209 NJ Super 51; 506 A2d 1253 (1986). New Mexico: *McNeil v Rice Engineering & Operating Inc*, 139 NM 48; 128 P3d 476 (NM App, 2005). North Dakota: *Wells v First American Bank West*, 1999 ND 170; 598 NW2d 834 (1999). Ohio: *Collins v Sotka,* 81 Ohio St 3d 506, 692 NE2d 581 (1998). Oklahoma: *Resolution Trust Corp v Grant*, 1995 Okla 68; 901 P2d 807 (1995). Rhode Island: *Wilkinson v Harrington*, 104 RI 224; 243 A2d 745 (1968). South Carolina: *Gattis v Chavez*, 413 F Supp 33 (D SC, 1976). Tennessee: *Hathaway v Middle Tennessee Anesthesiology, PC*, 724 SW2d 355 (Tenn App, 1986). Texas: *McDade v Texas Commerce Bank, Nat'l Ass'n*, 822 SW2d 713 (Tex App, 1991). Utah: *Klinger v Kightly*, 791 P2d 868 (Utah, 1990). Vermont: *Leo v Hillman*, 164 Vt 94; 665 A2d 572 (1995). Virginia: *Locke v Johns-Manville Corp*, 221 Va 951; 665 A2d 572 (1981). Washington: *White v Johns-Manville Corp*, 103 Wash 2d 344; 693 P2d 687 (1985). West Virginia: *Gaither v City Hosp*, 199 W Va 706; 487 SE2d 90 (1997). Wisconsin: *Hansen v A H Robins Co, Inc*, 113 Wis 2d 550; 335 NW2d 578 (1983). Wyoming: *Olson v A H Robins Co, Inc*, 696 P2d 1294 (Wyo, 1985). District of Columbia: *Burke v Washington Hosp Ctr*, 293 F Supp 1328 (D DC, 1968).

so as to prevent absurd results, injustice or prejudice to the public interest."

*McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). See

also *Cameron v Auto Club Ins Ass'n*, 476 Mich 55; 718 NW2d 784 (2006).

Without the discovery rule, plaintiffs will lose the right to pursue certain causes of

action before they have or could have had knowledge of them. The plaintiff in this

case falls within that group.

Moreover, given this Court's decision in *Henry v Dow Chemical Co*,[9] the

very real possibility exists that there will be cases in which a plaintiff will never be

able to file suit. In *Henry*, this Court held that a plaintiff can pursue a tort claim

only if he or she has suffered a present injury. *Id.* at 74. Because there will be

cases in which a person's injury will not be manifested for a prolonged time, there

will be cases where no cause of action can ever be pursued. These are cases where

a person's injury does not manifest itself until the established limitations period

has expired. The absurdity of a system that deprives someone of his or her cause

of action before it can be instituted is manifest. As Judge Jerome Frank stated:

> Except in topsy-turvy land you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.*, before a judicial remedy is available to the plaintiff. For a limitations statute, by its inherent nature, bars a cause of action solely because suit was not

---

[9] 473 Mich 63; 701 NW2d 684 (2005).

brought to assert it during a period when the suit, if begun in that period, could have been successfully maintained; the plaintiff, in such a case, loses for the sole reason that he delayed—beyond the time fixed by the statute—commencing his suit which, but for the delay, he would have won. [*Dincher v Marlin Firearms Co*, 198 F2d 821, 823 (CA 2, 1952) (Frank, J., dissenting).]

Today's decision to abolish the discovery rule also raises constitutional questions regarding the extent of the Legislature's authority to enact statutes of limitations. The Legislature can, if it chooses, completely eliminate common-law causes of action.[10] But the enactment of a statute of limitations implicates other considerations. The purpose of a limitations statute is to "penalize plaintiffs who have not been industrious in pursing their claims,"[11] not to eliminate a valid cause of action when the plaintiff is without fault. *Lemmerman v Fealk*, 449 Mich 56, 65-66; 534 NW2d 695 (1995). For this reason, this Court has repeatedly held that a limitations period that does not provide a reasonable period in which to file suit is constitutionally suspect. See, e.g., *Krone v Krone*, 37 Mich 308 (1877); *Dyke v Richard*, 390 Mich 739; 213 NW2d 185 (1973).

In *Dyke*, this Court prohibited a statute of limitations from extinguishing a right to bring suit before reasonable discovery of the cause of action was possible. The Court explained:

Since "[i]t is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought . . .",

---

[10] *Bean v McFarland*, 280 Mich 19, 21; 273 NW 332 (1937).

[11] *Lothian v Detroit*, 414 Mich 160, 166-167; 324 NW2d 9 (1982).

19

*Price, supra*, a statute which extinguishes the right to bring suit cannot be enforced as a law of limitation. As to a person who does not know, or in the exercise of reasonable diligence could not ascertain within the two year period that he has a cause of action, this statute has the effect of abolishing his right to bring suit.

Such a statute, if sustainable at all could be enforced only as one intended to abolish a common law cause of action. But this statute does not purport to do this, is not asserted to do so, and we cannot ascribe any legislative intention to accomplish that end. We read it as a statute of limitation which applies in every case except where the plaintiff does not know of his cause of action. [*Dyke,* 390 Mich at 746-747.]

And this Court has also held that a limitations provision that does not afford a reasonable time to file suit cannot be constitutionally upheld, because it prevents access to the courts. *Forest v Parmalee*[12] held that "statutes of limitations are to be upheld by courts unless it can be demonstrated that they are so harsh and unreasonable in their consequences that they effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right."

In certain circumstances, the common-law discovery rule is necessary to ensure that plaintiffs have had a reasonable time to gain knowledge of their causes of action. By abrogating this rule, the majority decision raises serious constitutional questions. These constitutional concerns counsel in favor of retaining the discovery rule.

This Court, like most, has long recognized the value of stare decisis. Its decisions applying the common-law discovery rule should be upheld under that

---

[12] 402 Mich 348, 359; 262 NW2d 653 (1978).

doctrine because (1) the decisions recognizing the rule were correctly decided, (2) a change in the discovery rule would have a drastic effect on plaintiffs' rights, (3) the discovery rule is workable, and (4) abolishing the rule will lead to constitutional violations as well as absurd and unjust results.

MCL 600.5869 REQUIRES APPLICATION OF THE COMMON-LAW
DISCOVERY RULE TO PLAINTIFF'S CLAIMS

A majority of this Court decides that the common-law discovery rule is inapplicable when MCL 600.5827 applies. I strongly disagree with this decision. But, even accepting it, the Court need not reverse the Court of Appeals decision in this case.

MCL 600.5869 provides:

All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry.

The majority finds that "plaintiff's claims accrued at the time of Eby's death." *Ante* at 30. Mrs. Eby was murdered in 1986. At that time, this Court recognized the common-law discovery rule. Thus, as of 1986, the law in this state was that the cause of action did not accrue until "all of the elements of the cause of action have occurred and can be alleged in a proper complaint." *Connelly v Paul Ruddy's Equip Repair*, 388 Mich 146, 150; 200 NW2d 70 (1970). It follows that, although some future plaintiffs may not be able to claim the benefit of the

21

common-law discovery rule, this plaintiff can. For this reason, the majority need not reverse the decision of the Court of Appeals.[13]

APPLICATION OF THE COMMON-LAW DISCOVERY
RULE TO THE FACTS OF THE CASE

Under the common-law discovery rule, a claim accrues when, on the basis of objective facts, a plaintiff can allege each element of the asserted claim. *Moll v Abbott Laboratories*, 444 Mich 1, 15-16; 506 NW2d 816 (1993). A claim for personal injury must allege that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, (3) the defendant's breach was the proximate

---

[13] The majority claims that § 5869 cannot save plaintiff's claim because the statutory law has not changed since 1986. This fact is irrelevant. Section 5869 states that "[a]ll actions and rights shall be governed and determined according to the law under which the right accrued . . . ." This section is not confined to statutory provisions. Rather, § 5869 includes all law. It is well established that the law includes the common law. E.g., *People v Blume*, 443 Mich 476, 480 n 7, 505 NW2d 843 (1993); *Myers v Genesee Co Auditor*, 375 Mich 1, 7; 133 NW2d 190 (1965); Const 1963, art 3, § 7. Because it is clear that this Court recognized a common-law discovery rule in 1986, § 5869 requires that the discovery rule be applied to plaintiff's case. And because § 5869 *requires* application of the discovery rule, the majority's discussion about retroactive versus prospective application of decisions by this Court is misplaced.

The majority also claims that I present no authority or explanation for why the discovery rule is applicable. *Ante* at 22. In fact, I have made such a presentation. I will recap it here: MCL 600.5869 states that all actions shall be governed by the law as it existed when the claim accrued. The majority asserts that the claim in this case accrued in 1986. In 1986, this Court recognized the common-law discovery rule. Therefore, the discovery rule was the law of the land at the time the claim accrued. Accordingly, § 5869 requires us to apply the common-law discovery rule to plaintiff's claim. As I think is obvious, the authority I cite as requiring application of the discovery rule is § 5869.

22

cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. *Chase v Sabin*, 445 Mich 190, 201 n 15; 516 NW2d 60 (1994).

Here, it was not until after Jeffrey Gorton was arrested that plaintiff found out that Mrs. Eby's killer was a stranger. Plaintiff could not have alleged a breach of duty against any of the defendants before knowing that a stranger, Gorton, had killed Mrs. Eby. Therefore, it was not until Gorton was identified as the killer that the statute of limitations began to run. Because plaintiff filed suit within three years of Gorton's identification as the killer, plaintiff's claims are timely.[14]

CONCLUSION

With today's decision, the majority throws Michigan into topsy-turvy land, where a person's legal claim dies before it is born. The majority finds that plaintiff's tort cause of action disappeared before plaintiff could discover the tortfeasor. As a result, the judgment of the Court of Appeals has been reversed.

I disagree with this decision on numerous grounds. MCL 600.5827 does not apply here. Moreover, it is a grievous error to overrule the precedent of this Court that recognizes the common-law discovery rule. The Legislature has signaled its approval of this precedent and indicated that the rule should apply in all cases except those alleging professional negligence. The judgment of the Court of Appeals should be affirmed and the discovery rule should remain untouched.

---

[14] MCL 600.5805(10) provides the applicable period of limitations for plaintiff's claim. That period is three years.

23

But, even if the discovery rule has no application in the future, this particular plaintiff should be allowed to claim the benefits of the rule. For these reasons, I dissent.

Marilyn Kelly